## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **THE ESTATE OF EARNEST LEE BOYLAND** | : | |
| **C/O EARNESTINE BONNER** | : | |
| **130 BELMONT ROAD** | : | |
| **MASON, TN 38049** | : | |
| | : | |
| **AND** | : | |
| | : | |
| **THE ESTATE OF DAVID SHELTON** | : | **CASE NO. _____** |
| **C/O CARIO A. ARMSTRONG** | : | |
| **806 EAGLES NEST DRIVE** | : | |
| **BYRAM, MS 39272** | : | |
| | : | **JUDGE _____** |
| **AND** | : | |
| **THE ESTATE OF LEE SYLVESTER** | : | |
| **CALDWELL** | : | |
| **C/O ISADORE CALDWELL** | : | |
| **POST OFFICE BOX 164062** | : | |
| **LITTLE ROCK, AR. 72216** | : | |
| | : | |
| **AND** | : | **CLASS ACTION** |
| | : | **ALLEGATIONS** |
| **BLACK FARMERS AND AGRICULTURALISTS,** | : | |
| **ASSOCIATION, INC.** | : | |
| **C/O THOMAS BURRELL, PRESIDENT** | : | |
| **5 NORTH 3ᴿᴰ STREET** | : | **JURY TRIAL DEMANDED** |
| **MEMPHIS, TN 38103** | : | |
| | : | |
| **IN THEIR PERSONAL AND INDIVIDUAL** | : | |
| **CAPACITIES AND AS REPRESENTATIVES OF** | : | |
| **A PUTATIVE CLASS OF SIMILARLY** | : | |
| **SITUATED INDIVIDUALS** | : | |
| | : | |
| **PLAINTIFFS,** | : | |
| | : | |
| | : | |
| | : | |
| **V.** | : | |
| | : | |
| **THOMAS VILSACK, SECRETARY** | : | |
| **UNITED STATES DEPARTMENT OF** | : | |
| **AGRICULTURE** | : | |

1

| | |
|---|---|
| **1400 INDEPENDENCE AVE., S.W.** | : |
| **WASHINGTON, D.C. 20250** | : |
| | : |
| **AND** | : |
| | : |
| **EPIQ CLASS ACTION & CLAIMS SOLUTIONS,** | : |
| **INC.** | |
| **1420 K. STREET** | : |
| **11ᵀᴴ FLOOR** | : |
| **WASHINGTON, D.C. 2005** | : |
| | : |
| **AND** | : |
| | : |
| **UNITED STATES DEPARTMENT OF** | : |
| **AGRICULTURE** | : |
| **HISPANIC & WOMEN FARMERS AND** | : |
| **RANCHERS** | : |
| **CLAIMS ADMINSITRATOR** | : |
| **P.O. BOX 4520** | : |
| **PORTLAND, OR 97208-4540** | : |
| | : |
| **DEFENDANTS.** | : |
| | : |

## COMPLAINT FOR INJUNCTIVE, MONETARY AND CLASS RELIEF AND VIOLATION OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964 (42 U.S.C. § 2000d,  AND THE FIFTH AMENDMENT OF THE CONSTITUTION

Plaintiffs, Earnestine Bonner, Cario A. Armstrong, Isadore Caldwell and the Black

Farmers and Agriculturalists Association, Inc.,  (Association), all of whom are African American

and members of a protected class, by their undersigned Attorney, Paul A. Robinson, Jr., for their

Class Action Complaint, allege upon personal knowledge as to themselves and their own acts,

and upon information and belief (based upon the investigation of their counsel) as to all other

matters, as to which allegations they believe substantial evidentiary support will exist after a

reasonable opportunity for further investigation and discovery as follows:

## I.    PARTIES

1.      Plaintiffs, the Estate of Earnest L. Boyland, the Estate of David L. Shelton and the Estate of Lee Sylvester Caldwell, are African American farmers or entities authorized to sue on their behalf.  Plaintiffs have applied for relief under the Claims Framework described at Exhibit A. The applications of these Plaintiffs have all been denied by Defendants solely on the basis of their race and gender — African American males.

2.      Plaintiff, Black Farmers & Agriculturalists Association, Inc. (BFAA, Inc.) is a not-for-profit organization created for the specific purpose of responding to the issues and concerns of Black famers in the United States and abroad.  Formed in 1997, the organization has a membership of more than one thousand five hundred (1,500) farmers nationwide, and 21 state chapters.  BFAA, Inc.  was also organized to monitor the conduct of the U.S. Department of Agriculture and the historic 1999 class action lawsuit, Pigford v. Glickman, 185 F.R.D. 82 (D.D.C. 1999) (hereinafter "Pigford I").  BFAA, Inc. is committed to seeing that every Black farmer receives appropriate compensation and that USDA discontinues its practices of blatant racial discrimination against Black farmers.  BFAA's membership is made up of not only Black males but also Black female and Hispanic farmers.  Moreover, Plaintiffs, Earnestine Bonner, Cario Armstrong and Isadore Caldwell are all members — in good standing — of BFAA, Inc.

3.      Defendant, Vilsack is the Secretary of the United States Department of Agriculture (USDA).  Defendant, USDA, has through a final agency rule, referred to herein as the "Framework" established separate unconstitutional discrimination claims procedures based upon race, gender and ethnicity.

4.      At all times relevant and material, Defendants, USDA employed or caused to be

employed Defendant, EPIQ a/k/a the claims administrator, to implement Defendant, USDA's

unconstitutional claims procedure.

5.      Defendant, EPIQ is — Plaintiff's believe — the successor owned of the a previous

Claims Administrator in the relevant Class Action lawsuit (Pigford I, Pigford II and Keepseagle)

know as the Poorman-Douglas Corporation in Portland, Oregon.

6.      Defendant, EQIP is a "direct recipient" of federal funds (Judgment Funds, 31 U.S.C §

1304 (a)): Judgments, awards, and compromise settlements and therefore, its programs and

activities are within the ambit of Title VI rules and guidelines, as follows:

> Within the time allowed under the Framework, Claimant will submit a
> completed and signed Claim Form and all documents and information
> required by the Framework (Claim Package), including the original of
> this Agreement. If any claims of credit-related discrimination by
> Claimant against USDA are pending in any court or administrative
> proceeding, this Claim Package must also include a signed Stipulation
> or Notice of Dismissal with Prejudice, whichever is appropriate, for
> such claims. For Claim Packages that have been forwarded by the
> Administrator to the Adjudicator, the Administrator wills file the
> Stipulation or Notice of Dismissal in the court or other tribunal**.**

## II.      JURISDICTION AND VENUE

7.      This court has subject matter jurisdiction over this action under 28 U.S.C §1331, 5 U.S.C.

§701, et seq., the Administrative Procedures Act and Title VI of the Civil Rights Act of 1964 (42

U.S.C. §2000d, et. seq.) 42 U.S.C.  § 198, as amended, and 7 U.S.C. §2279.

8.      Venue is properly laid in this district under 28 U.S.C. §1391 inasmuch as the defendants,

acted in this District or committed Constitutional infringements for which redress is sought in

this District.

9.     At all time relevant, Plaintiffs were entitled to have their claims of racial discrimination heard on the merit against Defendant, USDA as spelled out under the Farm, Food and Conservation Act of 2008, §14011 and  the  Appropriation Act  of 1999, §741 as  amended and codifies  at 7 U.S.C. §2279.

On  or about  February 25, 2011, the  Defendant, USDA, published  or caused  to  be published, an announcement (White House Rural Council) that read as follows:

> Today is an historic day for USDA. Working with colleagues at the Department of Justice, we launched a program that provides a path to justice for Hispanic and women farmers who believe they were discriminated against by USDA between 1981 and 2000. Many of these farmers and ranchers have waited and fought to get relief, but until now their only means of getting their complaints heard was to file an individual case in federal court. Today we are providing folks with a simpler path that enables them to file a claim for compensation that will be resolved by a neutral party without the involvement of the courts.

> When I was sworn in as Secretary of Agriculture two years ago, President Obama and I made a commitment to mend USDA's troubled civil rights record. Since then, we have taken comprehensive action to turn the page on past discrimination. Last year we entered into a settlement with black farmers in Pigford II to address pending claims, and finalized a historic settlement agreement with Native American farmers under Keepseagle that faced discrimination by USDA.

> With today's announcement, we are continuing work to build a new era for civil rights at USDA: correcting our past errors, learning from our mistakes, and outlining definitive action to ensure there will be no missteps in the future. The process has been long and often difficult, but my staff and I have been working hard every day to make USDA a model employer and premier service provider that treats every customer and employee fairly, with dignity and respect.

> If you are a woman or Hispanic farmer or rancher and feel you were discriminated against by USDA between 1981 and 2000, you must request a claims package to participate in the claims process. To begin this process, you can either call 1-888-508-4429 or visit www.farmerclaims.gov to submit your information online.

http://www.whitehouse.gov/blog/2011/02/25/usda-announces-claims-process-hispanic-and-women-farmers

10.     On or about January 2012, Defendants USDA and EPIQ instituted a Claim's Resolution Process and made claims applications available to certain persons based solely upon

race, ethnicity or gender claimants to request from the Defendant, EPIQ as follows:

▪        NOTICE TO WOMEN OR HISPANIC FARMERS AND RANCHERS: COMPENSATION FOR CLAIMS OF DISCRIMINATION

▪        SUMMARY OF CLAIMS PROCESS - WOMEN OR HISPANIC FARMERS AND RANCHERS

▪        FRAMEWORK

▪        FSA FOIA Requests

▪        INSTRUCTIONS, SUMMARY, DEFINITIONS

▪        SETTLEMENT AGREEMENT

▪        AUTHORIZATION TO DISCLOSE DEBT INFORMATION FORM

▪        APPLICATION CHECKLIST

▪        DESCRIPTION OF TIERS

11.     In May 2012, Defendant Vilsack, in his capacity as the Secretary of Agriculture, selected or caused the implementation of the claims resolution "Framework" attached and described in detail at Exhibit A. This "Framework" is an administrative claims process to resolve — through monetary payments — discrimination claims on behalf of Hispanic and Female Farmers.   Plaintiffs, Earnestine Bonner (Earnest Lee Boyland), Cario A. Armstrong (David Shelton) and Isadore Caldwell (Lee Sylvester) have been and continue to be aggrieved by the "Framework" implemented by Defendant, Vilsack as a final agency rule or action for the reason the Agency claims  process violates Plaintiffs' — or the claimants' they represent — Constitutional entitlement to Equal Protection of the laws.  Plaintiffs' right to Equal Protection have been violated for the reason due to Defendant, USDA's allocation of governmental benefits

on the basis of suspect racial, ethnic and gender criteria.  The claims "Framework" described at Exhibit A has caused and continues to cause direct injury to Plaintiffs, Bonner, Armstrong and Caldwell  through the inappropriate use of race and/or gender in violation of the Civil Rights Act of 1964 as codified under 42 U.S.C.  §2000(d) et. seq., 42 U.S.C. §1981, the Equal Protection Clause of the United States Constitution applicable under the Fifth Amendment and 7 U.S.C. § 2279.

12.    Despite the fact that the Department of Justice ("…working with colleagues at the Department of Justice...") was aware of the highly offensive and discriminatory treatment against Plaintiffs, Bonner, Armstrong and Caldwell, no one took any corrective action to stop it.

### III.   GENERAL ALLEGATIONS

13.    Plaintiffs, Bonner, Armstrong and Caldwell bring this action as a Class Action under Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all persons who have been discriminated against based on their race, African American, or gender, male, by final and official agency action taken by Defendant, Vilsack directly or by Defendant EPIQ (Claim Administrator) at the express direction of or, on behalf of Defendant, USDA. The acts of defendants that give rise to this action are described in greater detail below.

14.     In May, 2012, Defendant, Vilsack — in his capacity as the Secretary of Agriculture — selected or caused the selection of Defendant, EPIQ as Claim Administrator to implement the claims resolution "Framework" attached and described in detail at Exhibit A. This "Framework" is an administrative claims process to resolve — through monetary payments — discrimination claims on behalf of Hispanic and Female Farmers.  Plaintiffs, African American farmers or their representatives, have been and continue to be aggrieved by the "Framework" implemented by

Defendant, Vilsack as a final agency rule or action for the reason the Agency claims  process

violates Plaintiffs' or the claimants they represent Constitutional entitlement to Equal Protection

of the laws. Plaintiffs' right to Equal Protection have been violated for the reason —

notwithstanding the lack of a compelling governmental interest — defendants have allocated

governmental benefits on the basis of suspect racial, ethnic and gender criteria.

15.      Due to implementation of the "Framework" as a final USDA rule, Plaintiffs have

suffered an injury-in-fact that is directly traceable to the  unconstitutional acts and related actions

taken pursuant to the "Framework" by Defendants, USDA and EPIQ in establishing a claims

process.

16.      Beginning on or about September of 2012, the Defendant, USDA announced or caused to

be announced statements that potential claimants could start to both request and complete the

CLAIM FORM necessary to receive relief and compensation for racial discrimination from

USDA.

17.      From on or about January of 2013, Plaintiffs, and/or their heirs, administrators and

assigns Earnestine Bonner, Cario Armstrong and Isadore Caldwell and other similarly situated

Black farmers and ranchers requested a claims package from Defendant, EPIQ in Portland,

Oregon.  Moreover, all of the Plaintiffs received Tracking Numbers from Defendant, EPIQ.

18.      At all times relevant and material several African American male claimants, including

Isadore Caldwell made several telephone calls to the office of Plaintiff (the Association)

complaining that, among other things, several [employees] of Defendant, EPIQ inform him

(Caldwell) — during a (derogatory) telephone conversation between Plaintiff, Caldwell and

Defendant's employee that he would not be able to receive a claims package because he (Caldwell) was calling to receive a claims package for the benefit of an African America male.

19.     Upon this information being reported to the Association's staff workers, Thomas Burrell (the Association's President) made a call to Defendant's office in Portland, Oregon and lodged a complaint to a Mr. Martin regarding — bases upon information and belief —  one of his employees  named Roberto and Mr. Roberto's derogatory telephone comments to Plaintiff, Caldwell.

20.     Shortly thereafter, other Association's members continued to complain to the Association regarding the fact that the same (Roberto) and other Defendant's employees were giving out the same  offensive and derogatory statements regarding the fact that African American males would not be able to receive Claims Packages because of their race.

21.     However, from approximately July of 2013, through the present time all claimants, who identified themselves as African American male farmers and/or ranchers were denied by Defendant, EPIQ because they list their race and gender as being — African American males.

## IV.    CLASS ACTION ALLEGATIONS

22.     Plaintiffs adopt and incorporate by reference the allegations in paragraph 1 through 21 of this Complaint.

23.     Plaintiffs bring this action as a Class Action under Rules 23(a), (b) (1), (b) (2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all socially disadvantaged African American male farmers and ranchers who have not been able to make a meritorious claim of discrimination against USDA pursuant to the Farm Bill of 2008 and it pertinent part, §14011 and are continuing to be denied by reason of race or gender from participation in the claims process described at Exhibit A, the "Framework" by Defendant, EPIQ.

24.     The African America male Plaintiffs experienced the exact same racial discrimination treatment otherwise complained of by male Hispanic farmers and ranchers and female farmers and ranchers during the relevant time period.

25.     The Class consists of thousands of persons located throughout the United States, thus, the members of the Class are so numerous that joinder of all Class members is impracticable. The exact number of Class members is not presently known to plaintiffs, but can readily be determined by appropriate discovery.

26.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class actions.  Plaintiffs have no interests that are adverse or antagonistic to those of the Class.

27.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Because the damages suffered by many individual class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the class members to individually seek redress for the wrongful conduct alleged herein.

28.     Common questions of law and fact exist as to all members of the class and predominate

over any questions solely affecting individual members of the class.  Among the questions of law

and fact common to the class are:

a)  Does the claim "Framework" at Exhibit A violate the Equal Protection Clause

of the United States Constitution;

b)  Whether Plaintiffs and the members of the class have sustained injury by reason of

Defendants' actions and omissions;

c)  Whether the class period extends from enactment of the Framework, May 2012, until

the present.

29.     The action in implementing the Framework at Exhibit A is final agency action.


## V.      WAIVER OF SOVEREIGN IMMUNITY

30.     Plaintiffs reassert and incorporate that which is set forth in Paragraphs 1 through 29 of

this Complaint.

31.     Plaintiffs bring this action against federal officials or persons acting on behalf of

federal officials and performing federal functions.  Plaintiffs hereby assert a clear waiver of

sovereign immunity that covers the substantive claims and remedies that they seek.  The APA

waives Defendants' sovereign immunity for all of Plaintiffs' claims. 702 states:

> An action in a court of the United States seeking relief other than money
> damages' and stating a claim that an agency or an officer or employee
> thereof acted or failed to act in an official capacity or under color of legal
> authority shall not be dismissed nor relief therein be denied on the
> ground that it is against the United States.

# VI.     BACKGROUND

32.     Plaintiffs adopt and incorporate the referenced the allegations in paragraphs 1

through 31 hereof as if fully rewritten herein.

33.     Between 1997 and 2000, African-American, Native American, Hispanic and female

farmers filed four class action lawsuits for the reason USDA routinely engaged in discrimination

on the basis of race, ethnicity, or gender in the administration of its farm benefit programs, and

failed to investigate the claims of farmers who filed complaints based on such conduct with the

USDA.  These cases were:  Pigford v. Glickman, Nos. 97-1978, 98-1693 (D.D.C.) (Pigford I)

and In re. Black Farmers Discrimination Litigation, No. 08-0511 (D.D.C.) (Pigford II) (African-

American farmers); Keepseagle v. Vilsack, No. 99-3119 (D.D.C.) (Native American farmers);

Love v. Vilsack, No. 00-2502 (D.D.C. filed Oct. 19, 2000) (female farmers); and Garcia v.

Vilsack, No. 00-2445 (D.D.C. filed Oct. 13, 2000) (Hispanic farmers).

34.     Congress passed, and on June 18, 2008, the President signed, a law granting  any socially

disadvantaged farmer or rancher who had not filed a meritorious claim for relief against USDA

could do so under  §14011 of the Farm, Conservation and Energy Act of 2008 (2008 Farm Bill),

as follows:

> It is the sense of Congress that all pending claims and class actions
> brought against the Department of Agriculture by socially disadvantaged
> farmers or ranchers (as defined in 355(e) of the Consolidated Farm and
> Rural Development Act (7 U.S.C. 2003(e)), including Native American,
> Hispanic, and female farmers or ranchers, based on racial, ethnic, or
> gender discrimination in farm programs participation should be resolved
> in an expeditions and just manners.

**Hispanic (The Garcia Case) and**
**Women Farmer Class Action Settlement Suit (The Love Case)**

35.     The <u>Garcia v. Vilsack</u> lawsuit involved allegations that USDA unlawfully discriminated against Hispanic farmers. The lawsuit, which was filed in the U.S. District Court for the District of Columbia in 2000, on behalf of all Hispanic farmers across the country. The bases of this suit were systematic discrimination against a Class of farmers regarding credit transactions and disaster benefits in violation of the Equal Credit Opportunity Act (15 U.S.C. §1691 et seq.) and the Administrative Procedure Act.  Moreover, any successful Hispanic and Women Farmers and Ranchers would have been paid from the Judgment Fund (31 U.S.C. §1304).

36.     Both <u>Garcia</u> and <u>Love</u> were initially heard by the same district court judge and were eventually consolidated on appeal.  As a result, the litigation history for the two cases is very similar and the claims process and payment program are the same. The total amount of funds, which would come from the Justice Department Judgment Fund, is between $1.23 and $1.33 billion and depends on the number of successful claimants. The claimants would go through a streamlined process to have their claims resolved. The amount of awards would be capped at $50,000, but debt relief ($160 million total) and tax relief can be part of a successful award. Tax relief is 25% of the sum of the award and debt relief.

### Part 3: Claim Form Identity:  (A)

37.     At all times relevant and material the Claim Form specifically asked every claimant to check (yes or no) in the box corresponding to the following questions:

  a.   Are you Hispanic/Latino
  b.   Are you female

See Exhibit B of Claim Form (Page 5 of 16).

**Part 3:  Claim Form:  B, C, D, E and F**

38.     Additionally, the Claim Form asked questions regarding, *inter alia,* the merits of the

Plaintiff's claim of racial discrimination against the Defendant, USDA.  Both the 1999

Appropriations Act ( §741) and the 2008 Act (§ 14011 and 14012) required that any claimant

seeking relief from Defendant, USDA for racial discrimination against the same, must have

proven their claims under 15 U.S.C  1691 et seq, (The EQUAL CREDIT OPPORTUNITY ACT

of 1974, as amended).  See, Timothy C. Pigford et al., v. Glickman, 185 F.R.D. 82 (D.D.C.

1999).   See also Hispanic/Women claim form at Pages 5 - 7 of 16 as follows:

  A.  WHEN DID YOU OPERATE, OR TRY TO OPERATE, A FARM
  B.  WHEN AND WHERE DID YOU OWN OR RENT, OR TRY TO OWN OR RENT,
      FARM LAND?
  C.  DID YOU COMPLETE AND SUBMIT A LOAN APPLICATION TO USDA?
  D.  ATTEMPTED APPLICATION – TIER 1(a) ONLY
  E.  IN WHAT CAPACITY DID YOU APPLY

   These same questions were asked of claimants in Pigford I, Pigford II and the

lawsuit with Native Americans in Keepseagle v. Vilsack.


39.     This administrative claims process [Framework] and its patent denial of all claims

submitted on behalf of African American males — because of their race — is the subject of

BFAA's Complaint for Rule 23 Certification and Defendants violation of Title VI of the 1964

Civil Rights and other statutes, herein above referenced.


## A)  ASSOCIATIONAL STANDING


40.     In International Union, the court stated:

     An association has standing to bring suit on behalf of its members when (1)
     its members would otherwise have standing to sue in their own right; (2) the
     interests it seeks to protect are germane to the organization's purpose; and (3)
     neither the claim asserted nor the relief requested requires the participation of
     individual members in the lawsuit.

Here Plaintiff, BFAA (Association) satisfies all three prongs.  Thus, BFAA has standing to bring

an action, against the United States on behalf of its members.

41.     The "judicial power…defined by Art. III is not an unconditional authority to determine

the constitutionality of legislative or executive acts" but, rather, is limited to the resolution of

"cases" and "controversies."  Valley Forge Christian Coll. V. Ams. United for Separation of

Church & State, Inc., 454 U.S. 464, 471 (1982); Lujan v. Defenders of Wildlife, 504 U.S. 555,

559-60 (1992).  An "essential and unchanging part" of that limitation is the doctrine of standing.

Lujan, 504 U.S. at 560.  Indeed, "[t]he Art. III doctrine that requires a litigant to have 'standing'

to invoke the power of a federal court is perhaps the most important of these doctrines."  Allen v.

Wright, 468 U.S. 737, 750 (1984).  "At an irreducible minimum, Art. III requires the party who

invokes the court's authority to show (1) that he personally has suffered some actual or

threatened injury as a result of the putatively illegal conduct of the defendant, that (2) the injury

fairly can be traced to the challenged action, and (3) is likely to be redressed by a favorable

decision." Valley Forge, 454 U.S. at 472 (internal citations omitted).

42.     Beyond these constitutional requirements, a plaintiff must also satisfy certain

prudential standing requirements, based on the principle that the judiciary should "avoid

deciding questions of broad social import where no individual rights would be vindicated."

Phillips Petroleum Co., v. Shutts, 472 U.S. 797, 804 (1985).  Prudential standing requires, inter

alia, that a party "assert his own legal interests rather than those of third parties," Id. At 804, and

that a claim must not be a "generalized grievance" shared in by all or a large class of citizens,

Warth v. Seldin, 422 U.S. 490, 499 (1975).  Prudential standing also addresses whether "the

constitutional or statutory provision on which [a plaintiff's] claim rests properly can be

understood as granting persons in the plaintiff's position a right to judicial relief."  See, Id. at

499-500. Thus, the litigant's complaint must fall within the "zone of interests to be protected or

regulated by the statute or constitutional guarantee in question."  Valley Forge, 454 U.S. at 475.

43.     Article III standing is a jurisdictional issue.  See, United States v. Viltrakis, 108

F.3d 1159, 1160 (9th Cir. 1997).  Accordingly, it "may be raised at any stage of the proceedings,

including for the first time on appeal."  See, A-Z Intern v. Phillips, 179 F.3d 1187, 1190-91 (9th

Cir. 1999). To satisfy standing requirements, a plaintiff must prove that "(1) it has suffered an

'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural

or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3)

it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable

decision." Friends of the Earth, Inc. v. Laidlaw Envtle. Servs. (TOC), Inc., 528 U.S. 167, 180-81

(2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561, (1992)).  BFAA satisfies

these requirements.

44.     "The party who invokes the power [of the Judiciary to declare a statute

unconstitutional] must be able to show not only that the statute is invalid, but that he has

sustained, or is immediately in danger of sustaining, some direct injury as the result of its

enforcement, and not merely that he suffers in some indefinite way in common with people

generally." Fairchild v. Hughes, 258 U.S. 126 (129) (1922).

45.     We must consider whether a criminal defendant has standing to raise the

 equal protection rights of a juror excluded from service in violation of these principles. In the

ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a

claim to relief on the legal rights or interests of third parties. *Department of Labor* v. *Triplett, 494*

U. S. 715, 720 (1990); *Singleton* v. *Wulff,* 428 U. S. 106 (1976). This fundamental restriction on

our authority admits of certain, limited exceptions.  We have recognized the right of litigants to

bring actions on behalf of  third parties, provided three important criteria are satisfied: The

litigant must have suffered an "injury in fact," thus giving him or her a "sufficiently concrete

interest" in the outcome of the issue in dispute, *id.,* at 112; the litigant must have a close relation

to the third party, *id.,* at 113-114; and there must exist some hindrance to the third party's ability

to protect his or her own interests. .

     Plaintiff, BFAA, here meets all standing requirements:

1. Plaintiff, BFAA, suffered an injury in fact for the reason in the absence of prospective
   injunctive relief BFAA's members are likely to be racially discriminated against in the
   future by the United States.

2. The injury is traceable to the settlement because the Claims Resolution Process which
   authorized the settlement does not prohibit prospective relief and prospective relief could
   have been incorporated into the settlement.

3. A favorable decision will provide redress for the reason if the "FRAMEWORK"

    declared invalid, the historic injury to Plaintiffs interests will not be repeated and
   reinforced.

46.    Prudential standing is also satisfied here for the reason, BFAA seeks to

vindicate its personal interests in avoiding future discrimination, not merely monetary relief for

conduct that is capable of repetition by the United States.

47.     Where, as here, the government predicates the allocation of government

resources based upon race, ethnicity or gender, in the absence of a clearly articulated compelling

interest, the governmental action violates the Constitution.

## COUNT I —— TITLE VI VIOLATION
### (42 U.S.C. §2000d)

48.     Plaintiffs adopt and incorporate by reference the allegations in Paragraph 1

through 47 of the Complaint.

49.     Plaintiffs, Earnestine Bonner, Cairo A. Armstrong and Isadore Caldwell are members of a

protected class.

50.     The position of the Claims Administrator was a supervisory and decision making position

authorized — and paid for with tax payer funds — by Defendant, USDA regarding "all" of the

claims to be processed in the instant Framework.

51.     During all times relevant and material, Defendant, EPIQ had absolute control over the

distribution, collection and decision making power regarding both the eligibility and approval of

claims submitted by all claimants in the Claims Resolution Process.

52.     During all times relevant and material Defendant, EPIQ required all potential claimants

in the instant Framework to provide documents (Drivers License and/or Death Certificate, etc.)

which identified — upon the face of the document — the claimant's sex, race, ethnicity and

gender.  These documents were not required by African American claimants in Pigford I.

53.     Defendant, EPIQ was a final policy maker and/or decision maker who acted under the

color of law with respect to the approval of discriminatory treatment and decision affecting

Plaintiff's Bonner, Armstrong and Caldwell as spelled out by Congress under the Appropriation's Act of 1999, §741 and the Food, conservation and Energy Act of 2008, §14011, as more fully described in this Complaint.

54.     At all times relevant and material, Defendant, EPIQ acted within the scope of its employment by Defendant, USDA.

55.     Plaintiffs, Bonner, Armstrong and Caldwell had a constitutional protected right to equal protection under the law as was guaranteed through Title VI of the Civil Right Act of 1964 et seq.

56.     Defendant's EPIQ actions have violated Title VI of the Civil Rights Act of 1964 as codified under 42 U.S.C. §2000d — **prohibition against exclusion from participation in, denial of benefits of, and discrimination under federally assisted programs on ground of race, color, or national origin states:**

> No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

57.     The Defendant, EPIQ was personally involved in the discriminatory treatment of which Plaintiff's complains.

58.     Defendants, EPIQ's action and conduct were the approximate cause of Plaintiff's constitutional injury.

59.     The blatant denial by the Defendant, EPIQ of African American male claimants from participating in the claims Process based solely on their race, in the Hispanic and Women Farmers and Ranchers program constitutes a *prima facie* case of racial discrimination by an agency benefiting — directly — from administering a "program or activity" otherwise receiving

federal funds.  See, Grove City College v. Bell, 687 F.2d 684 ("The enactment of Title IX in 1972 was the culmination of efforts over several years to ban gender discrimination in the field of education. Patterned after Title VI of the Civil Rights Act of 1964, which proscribes discrimination by reason of race, color, religion, or national origin,  "(t)he drafters of Title IX explicitly assumed that it would be interpreted and applied as Title VI had been during the preceding eight years.)" Id.

60.     The Court went on to say that the enactment of Title IX in 1972 was the culmination of efforts over several years to ban gender discrimination in the field of education.  Patterned after Title VI of the civil Rights Act of 1964, which prescribes discrimination by reason of race, color, religion, or national origin, "(t)he drafters of Title IX explicitly assumes that it would be interpreted and applied as Title VI had been during the preceding either years."  Cannon v. University of Chicago, 441 U.S. 677, 696, 99 S.Ct 1946, 1957, 60 L.Ed,2d 560 (1979).12 Indeed, the legislative history reveals that Title IX was designed to fill the gap left by Title VI of the Civil Rights Act of 1964, which did not prohibit discrimination based on sex.  See, e.g., 118 Cong.Rec.5807 (1972) (Remarks of Senator Bayh).

61.     Moreover, the court continued, "the government acting through the United States Department of Agriculture makes this overt act, support and comfort for racial discrimination in violation of a clearly defined public policy.  This fact was made abundantly clear in Bob Jones University v. United States, 639 F.2d 147 (1980), ("Bob Jones University's racial policies violated the clearly defined public policy, rooted in our Constitution, condemning racial discrimination and, more specifically, the government policy against subsidizing racial discrimination in education, public or private. The government interest in eliminating all forms of racial discrimination in education is compelling. See, e. g., Brown v. Board of Education, 347

U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). It extends to private action as well as public, Runyon v. McCrary, 427 U. S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1975), and has a special vitality where the integration of public schools has made private education attractive to those who would try to turn back the clock. Government must 'steer clear' of any expression of support for racial discrimination in education. See, Norwood v. Harrison, supra, 413 U.S. at 467, 93 S.Ct. at 2811.)" Id.

62.     As a direct and proximate result of the foregoing, Plaintiffs have suffered embarrassment, humiliation, emotional distress, and other forms of damage.

**WHEREFORE**, Plaintiff, Earnestine Bonner, Cario A. Armstrong and Isadore Caldwell, request that this honorable court:

1.     Enter judgment in Plaintiff(s) favor and against Defendant, EPIQ for its violations of Title VI (42 U.S.C. §2000d);

2.     Award Plaintiffs actual damages suffered, including loss of payment from the discrimination by Defendant, USDA's lawsuit for racial discrimination under ("ECOA") Equal Credit Opportunity Act, §1691 et seq., to include any Debt Forgiveness and Injunctive Relief made available to other similarly situated farmers and ranchers.

3.     Award Plaintiffs compensatory damages under Title VI for embarrassment, anxiety, humiliation and emotional distress Plaintiffs have suffered;

4.     Enjoined Defendants, EPIQ their officers, agents, employees, and anyone acting in concert with them, from discriminating, harassing and retaliating against Plaintiffs and any employee; Award Plaintiffs reasonable cost and attorney's fees; and

5.     Grant Plaintiffs, such other and further relief as this court deems equitable and just.

## COUNT II —- VIOLATION OF CIVIL RIGHTS ACT OF 1964, TITLE VI OF THEESTATE OF EARNEST LEE BOYLAND

63.     Plaintiff, Earnestine Bonner, adopts and incorporates by reference the allegations Paragraph 1 through 62 of this Complaint.

64.     Plaintiff, Earnestine Bonner and her father Earnest Lee Shelton are/were members of a protected class.

65.     Plaintiff, Bonner alleged that her father experienced economic damages as a result of the discrimination against him by USDA as was found by both Congress under the Appropriations, Rural Development and Administrative Act, Pub. Law 105-277 [§741, codified at 7 U.S.C. § 2279 note ("§741")], and/or the Food, Conservation Act of 2008, §14011 during the relevant period of 1981 through 2000. [1]

66.     Plaintiff, Bonner maintains that her father was similarly situated to the claimants in the instant Claims Resolution Process for Hispanic and Female farmers and ranchers.  That her father was discriminated against by USDA during the relevant time period (1981 through 2000) by being denied loans and credit benefits from USDA as was the case for the Hispanic/Latin (female) farmers and ranchers.

67.     Plaintiff, Earnestine Bonner maintains that she submitted a meritorious claim of discrimination against Defendant, USDA pursuant to the 15 U.S.C.  §1691 et. seq. (Equal Credit Opportunity Act, as amended) and was entitled, on behalf of her (socially disadvantaged farmers/rancher) father, Earnest Lee Boyland, to relief in the  instant Claims Resolution Process as referenced in the unambiguous  language of the 2008 Farm Bill (§14011).

---

1 See, Plaintiff's Exhibit D (economic damages) at Page 5 ($40,250.00).

68.     Plaintiff, Bonner further maintains that she had not participated, on behalf of
her father's Estate, in any previous lawsuit or Claims Process offering relief for racial
discrimination against Defendant, USDA.  Plaintiff, Bonner states that the instant Claims
Resolution Process provided the only remedy for her (father) to obtain relief for racial
discrimination ("ECOA") against USDA for the herein mentioned discrimination against her
father.  See again No. 14 herein above (announcement).

69.     Defendant, EPIQ is an entity receiving federal funds pursuant to the FRAMEWORK
financed by the Defendant, (USDA).

70.     Defendant, EPIQ's actions, as alleged herein, violated Plaintiff, Bonner/Boyland's rights
as guaranteed by the Civil Rights Act of 1964, Title VI, as amended.

71.     On about March 18, 2013, Plaintiff, Earnestine Bonner, on behalf of the
Estate of, Earnest Lee Boyland — Tracking No. 119783 (Claim No. 12422) — submitted a
Claim Form to the Defendant, EPIQ and stated that she was filing the said claim on behalf of her
deceased father who was an African American male.  See Exhibit C of claim form (Page 1 of 16).
Moreover, Plaintiff indicated on the referenced Claim Form that she had answered the requisite
questions on a separate — Notarized Affidavit and had further attached the said Affidavit — as
being her Exhibit "A" — to her Claim Form.   See attached Exhibit D (Affidavit of Earnestine
Bonner).

72.     Also, Plaintiff, Bonner provided — as was required by Defendant, EPIQ — a copy of a
Certificate of Death on claimant Earnest Lee Boyland.  This referenced Certificate of Death
clearly showed that Earnest Lee Boyland was a Black male.  See Exhibit E (Certificate of
Death).[2]

---

2 The Claim Form asked if the Submitter (Earnestine Bonner) was filing a claim on behalf of a deceased person
(Part: 1, Question No. 3(a) (Is the claimant's death certificate included with this Claim Form?).

73.     However, On July 17, 2013, Plaintiff, Bonner received a letter from Defendant, EPIQ,

Tracking No. 119783 stating, *inter alia*, the following:

> **Re**:  Ineligibility for Claims Resolution Process
>
> Dear Estate of Earnest L. Boyland,
>
> Thank you for your interest in the Hispanic and Women Farmers and
> Ranchers Claims Resolution Process.  To participate in this Process, you
> must be either Hispanic/Latino or female.   On your Claim Form, you
> indicated that you are an African American male.  As such, you are not
> eligible to participate in this Claims Process, and your claim has been
> **DENIED.**

See attached Exhibit F.

74.     That the arbitrary and blatant denial of her father's claim for relief presented

the only opportunity for Bonner to present a meritorious claim for discrimination against

Defendant, USDA: that this denial has created concrete injury-in-fact to her father's Estate

because of the unconstitutional acts of Defendant, EPIQ.

75.     Therefore, Plaintiff, Earnestine Bonner has proved by presenting *prima facie* evidence

showing that Defendant, EPIQ discriminated against her father, Earnest Lee Boyland, because of

his race and that race was the determinative factor in Defendant's, EPIQ's decision of refusing

him (Earnest Lee Boyland) an opportunity to provide evidence and to be a party — as is herein

described in the instant Claims Resolution Process.

WHEREFORE, Plaintiff, Earnestine Bonner, requests that this honorable court:

1.     Certify this Complaint as a Class Action under federal Rule of Civil Procedure 23(a), (b)

(1), (b) (2) and (b) (3) on behalf of all socially disadvantaged African American male farmers

_____

and ranchers who have not had a chance to make a meritorious claim of racial discrimination as a result of Defendants, USDA and EPIQ unconstitutional acts against them;

2.      Enter judgment in Plaintiff's favor and against Defendants, USDA and EPIQ for their violation of the Civil Rights Act of 1964, Title VI;

3.      Award Plaintiff compensatory damages under 42 U.S.C section 2000d for embarrassment, anxiety, humiliation and emotional distress Plaintiff has suffered;

4.      Award Plaintiff punitive damages for Defendants, USDA and EPIQ's willful violations of 42 U.S.C. Section 2000d;

5.      Enjoin Defendants, USDA and EPIQ from discriminating, denying and preventing other African America males in the Claims Resolution Process;

6.      Award Plaintiff reasonable cost and attorneys fee; and

7.      Grant Plaintiff such other and further relief as this court deems just and equitable.

## COUNT III — VIOLATION OF THE CIVIL RIGHTS OF
## THE ESTATE OF DAVID L. SHELTON

76.      Plaintiffs reassert and incorporate that which is set forth within Paragraph 1 through 75 hereof as if fully restated herein.

78.      On about March 14, 2013, Plaintiff, Cario A. Armstrong, on behalf of the Estate of David L. Shelton — Tracking No. 135421 (Claim No. 24529) — submitted a Claim Form to the Defendant, EPIQ and stated that he was filing the said claim on behalf of his deceased grandfather who was an African American male. See, attached Exhibit G.  Moreover, Plaintiff further indicated on the referenced Claim Form that he had indeed answered the requisite question on a separate, Notarized Affidavit and had further attached the said Affidavit — as being his Exhibit "A" — to his Claim Form.  See Exhibit H (Affidavit of Cario Armstrong).

79.     On July 17, 2013, Plaintiff, Armstrong did receive a letter from Defendant,

EPIQ, Tracking No. 135421 stating, *alter alia*, the following:

**Re**:  Ineligibility for Claims Resolution Process

Dear David L Shelton, Deceased,

Thank you for your interest in the Hispanic and Women Farmers and
Ranchers Claims Resolution Process.  To participate in this Process,
you must be either Hispanic/Latino or female.  On your Claim Form,
you indicated that you are an African American male.  As such, you
are not eligible to participate in this Claims Process, and your claim
has been **DENIED.**

See attached Exhibit I.

80.     Plaintiff, Cario A. Armstrong, maintains that he had made a meritorious

claim of discrimination pursuant to the 15 U.S.C.  §1691 et. seq. (Equal Credit Opportunity Act,

as amended) and was entitled, on behalf of his grandfather, David L.  Shelton, to relief in the

instant Claims Resolution Process as further referenced in the unambiguous language of the 2008

Farm Bill (§14011).

81.     Moreover, Plaintiff, Armstrong maintains that the Claims Resolution Process

and its Claim Form violated and worked a deprivation of his grandfather's rights to be a party in

a lawsuit and to give evidence for the protection of person and property as is enjoyed by white

citizens under 42 U.S.C. §1981 and further to be free of racial discrimination as codified under

42 U.S.C. § 2000(d) from the Defendant, EPIQ and was further deprived of his grandfather's

rights under the Equal Protection Clause of the United Stated Constitution.

82.     Plaintiff, Armstrong further maintains that he had not participated, on behalf of his

grandfather, in any previous lawsuit or Claims Process offering relief for racial discrimination

against Defendant, USDA.  That the instant Claims Resolution Process was the only remedy for

him (grandfather) to obtain relief for racial discrimination against USDA for the herein mention

discrimination against his grandfather.  That his grandfather did indeed experienced economic

damages as a result of the discrimination against him by USDA as was found by both congress

under the  Appropriations, Rural Development and Administrative Act, Pub. Law 105-277 [§741,

codified at 7 U.S.C. §2279 note ("741")] and/or the Food, Conservation Act of 2008, 14011

during the relevant period of 1981 through 2000. [3]  Claimant, Armstrong maintains that his

grandfather was similarly situated to the claimants in the instant claims resolution process for

Hispanic and Female farmers and ranchers.  That his grandfather was discriminated against by

USDA during the relevant time period (1981 through 2000) by being denied loans and credit

benefits from USDA as was the case for the Hispanic/Latin (female) farmers and ranchers.

83.     That the arbitrary and blatant denial of his grandfather's claim for relief

presented the only opportunity for him to present a meritorious claim for discrimination against

Defendant, USDA: that this denial has created concrete injury-in-fact to his grandfather's Estate

because of the unconstitutional acts of Defendant, EPIQ.  Further, Plaintiff, Armstrong,

maintains that his grandfather's "race" was the predominant factor motivating Defendants,

USDA and EPIQ in the decision of not allowing African American males (David L. Shelton) to

participate in the Claim Resolution Process.  And, that this honorable court can and should

provide redress for this Plaintiff's deprivation of rights.

---

3  See Plaintiff's Exhibit H (economic damages) at Page 5 ($59,200.00).

## COUNT IV — VIOLATIONS OF THE CIVIL RIGHTS OF
## ISADORE CALDWELL

84.     Plaintiffs reassert and incorporate that which is set forth within Paragraph 1

through 83 hereof as if fully restated herein.

85.     On about March 20, 2013, Plaintiff, Isadore Caldwell, on behalf of the estate of, Lee

Sylvester Caldwell-— Tracking No. 123277 (Claim No. 15748) — submitted a Claim Form to

the Defendant, EPIQ and stated that he was filing the said claim on behalf of his deceased father

who was an African American Male.  See attached Exhibit J.   Moreover, Plaintiff further

indicated on the referenced Claim Form that he had indeed answered the requisite question on a

separate — Notarized Affidavit and further attached the said Affidavit —as his Exhibit "A"— to

the Claim Form.   See attached Exhibit K.  Also, Plaintiff, Caldwell provided, as was required by

Defendant, EPIQ, a copy of his Driver's License (Arkansas) and a copy of his Medicare Card

(male) to the said EPIQ.  Plaintiff, Caldwell's Driver License did have a picture of him affixed to

it and showing that he (Caldwell) was indeed of African American decent (male).   See attached

Exhibit L.

86.     On July 17, 2013, Plaintiff, Caldwell received a letter from Defendant,

EPIQ, Tracking No. 159150 stating, *alter alia*, the following:

**Re**:  Ineligibility for Claims Resolution Process

Dear Estate of Lee S. Caldwell,

Thank you for your interest in the Hispanic and Women Farmers and
Ranchers Claims Resolution Process.  To participate in this Process,
you must be either Hispanic/Latino or female.  On your Claim Form,
you indicated that you are an African American male.  As such, you
are not eligible to participate in this Claims Process, and your claim
has been **DENIED.**

See attached Exhibit M.

87.     Plaintiff, Caldwell, maintains that he had submitted a meritorious claim of

discrimination against USDA pursuant to the 15 U.S.C.  §1691 et. seq. (Equal Credit

Opportunity Act, as amended) and was entitled, on behalf of himself for relief in instant Claims

Resolution Process as further referenced in the unambiguous language of the 2008 Farm Bill (§

14011).

88.     Moreover, Plaintiff, Caldwell maintains that the Claims Resolution Process

and its Claim Form violated and worked a deprivation of his rights to be a party in a lawful

proceeding and from giving evidence for the protection of person and property as is enjoyed by

white citizens under 42 U.S.C. §1981 and further to be free of racial discrimination as codified

under 42 U.S.C. §2000(d) from Defendant, EPIQ and further maintain that he was deprived of

his rights under the Equal Protection Clause of the United Stated Constitution.

89.     Plaintiff, Caldwell further maintains that he had not participated, on behalf of

his father's estate, in any previous lawsuit or Claims Process offering relief for racial

discrimination against Defendant, USDA.  That the instant Claims Resolution Process was the

only remedy for him (Lee S. Caldwell) to obtain relief for racial discrimination against USDA

for the herein mention discrimination against him.  That his father did indeed experienced

economic damages as a result of the discrimination against him by USDA as was found by both

congress and the courts under the  Agricultural, Rural Development, Food and Drug

Administration, and Related Agencies Appropriations Act, 1999 (Pub. L. No. 105-277, §741, 112

Stat. 2681 (codified at 7 U.S.C §2297), notes)), and/or the Food, Conservation Act of 2008,

§14011. [4]  That his father was similarly situated to the claimants in the instant claims resolution

4 See Plaintiff's Affidavit (Exhibit K, economic damages) at Page 4 ($25,750.00).

process. That he was discriminated against by USDA during the relevant time period (1981 through 2000) by being denied loans and credit benefits from USDA as was the case for the Hispanic/Latin (female) farmers and ranchers.

90.     That the arbitrary and blatant denial of his claim for relief presented the only opportunity for him to present a meritorious claim for discrimination against Defendant, USDA: that this denial has created concrete injury-in-fact to him because of the unconstitutional acts of Defendant, EPIQ.  Further, Plaintiff, Caldwell maintains that his father's "race" was the predominant factor motivating Defendants, USDA and EPIQ in the decision of not allowing African American males (Estate of Lee S. Caldwell) to participate in the Claim Resolution Process.

91.     Furthermore, an actual controversy now exists between Plaintiffs and Defendants as to whether Defendants have violated Plaintiff's right under the Fifth Amendment of the United States Constitution.

## COUNT V —— VIOLATIONS OF THE EQUAL PROTECTION AND DUE PROCESS  CLAUSE OF  THE CONSTITUTION

92.     The allegations set forth above in Paragraphs 1 through 91, inclusive, are incorporated into this cause of action by reference as if forth in full.

93.     Plaintiffs, Earnestine Bonner, Cario A. Armstrong and Isadore Caldwell are members of a protected class and further designated by congress as being socially disadvantage farmers and ranchers under 7 U.S.C. §2279.

94.     At all time relevant and material, Plaintiffs were representing the estates of deceased
African American farmers and/rancher who were the victims of racial discrimination as was
found to have been perpetrated against African American and socially disadvantaged farmers and
ranchers by congress under the Appropriations Act of 1999, §741 and/or under the Food,
Conservation and Energy Act of 2008, §14011.


95.     At all times relevant and material Defendant, EPIQ's advertisements, notices and claim
forms were designed and constructively excluded, Plaintiffs, Bonner, Armstrong and Caldwell
because of their race.

96.     In spite of Plaintiff's requests to be able to receive the subject claim forms, Defendant's
employees continued to refuse to allow Plaintiffs an opportunity to have their meritorious claims
of racial discrimination for redress from Defendant, USDA heard.


97.     But for, Plaintiffs, Bonner, Armstrong and Caldwell's race, they would have been able to
make a meritorious claim of discrimination in the Claims Resolution Process.


98.     First, Defendant, EPIQ refused to allow Plaintiff, Bonner, Armstrong and Caldwell to be
a party in the Claims Resolution Process and denied those claims.


99.     Second, Defendant, EPIQ's sole determination for the Plaintiffs, Bonner, Armstrong and
Caldwell's denial was based upon their race, to-wit:

> **"…you indicated that you are an African American male.  As such,
> you are not eligible to participate in this Claims Process, and your
> claim has been DENIED."**

100.    As a direct and proximate result of the foregoing, Plaintiffs have suffered embarrassment, humiliation, emotional distress, and other forms of damages.

101.    The estates for which Plaintiffs, Bonner, Armstrong and Caldwell represented had a meritorious claim of discrimination against Defendant, USDA for violation of the Equal Credit Opportunity Act, §1691, et seq.

102.    All of the plaintiff's estates suffered economic losses by the Defendant, USDA under ("ECOA") for being denied loan and credit benefits during the relevant period for which the statute of limitations was tolled under the Appropriations Act of 1999, §741.

103.    Had Plaintiffs, Bonner, Armstrong and Caldwell been able to have submitted their claims in the Claims Process their eligibility and approval under ECOA would have been established.

104.    Defendant, EPIQ prevented plaintiffs (Bonner, Armstrong and Caldwell) solely because of their race, from being a party and giving evidence in lawful proceeding for the protection of persons and property as is enjoyed by white citizens.


A)      **Strict Scrutiny**

105.    Plaintiffs (Earnestine Bonner, Cairo A. Armstrong and Isadore Caldwell) acknowledge and applaud the actions of the Secretary of Agriculture and Defendant, EPIQ for their resolve in making USDA a model employer and premier service provided as referenced in the Secretary's announcement to-wit:

> "With today's announcement, we are continuing work to build a new era for civil rights at USDA: correcting our past errors, learning from our mistakes, and outlining definitive action to ensure there will be no missteps in the future. The process has been long and often difficult, but my staff and I have been working hard every day to make USDA a model employer and

32

>premier service provider that treats every customer and employee
>fairly, with dignity and respect."

See again, White House Rural Council at No. 14, herein above.

106.    However, Plaintiffs argue that, notwithstanding the Defendants motives and resolve for

correcting the long history and devastating effects of racial discrimination against socially

disantvantage farmers and rancher in the past — their current method of creating racial, ethnic

and gender  classes distinctions — is as volative of the United State Constitution as the historical

discrimination for which Defendants intend to correct in the first place.  Accordingly, USDA's

sub-contractors (EPIQ) was not subjected to the constitutional standard of "***Strict Scrutiny***."

See, Bakke v. California, 438 U.S. 265 (1978).  The principle of equal protection admits no

"artificial line of a 'two-class theory'" that "permits the recognition of special wards entitled to a

degree of protection greater than that accorded others." Id., at 295.  This is exactly what the

"Framework" does.

107.    "Distinctions between citizens solely because of their ancestry are by their very

nature odious to a free people," Rice v. Cayetano, 528 U. S. 495, 517 (2000) (internal quotation

marks omitted), and therefore "are contrary to our traditions and hence constitutionally suspect,"

Bolling v. Sharpe, 347 U. S. 497, 499 (1954). "'[B]ecause racial characteristics so seldom

provide a relevant basis for disparate treatment," Richmond v. J. A. Croson Co., 488 U. S. 469,

505 (1989) (quoting Fullilove v. Klutznick, 448 U. S. 448, 533-534 (1980) (Stevens, J.,

dissenting)), "the Equal Protection Clause demands that racial classifications . . . be subjected to

the 'most rigid scrutiny'." Loving v. Virginia, 388 U. S. 1, 11 (1967).

108.     Moreover, other Black male claimants [5] have been denied by Defendant, EPIQ due to

their failure to complete the claim form.  However, to the extent that they would have been

denied because they were African American males, their lack of completion of the said claim

form will have constituted a futile act.  "…We agree with the district court, that "[t]he law

requires no one to perform a useless act." *MX Group,* 106 F.Supp.2d at 920 (citing *Jaffe-Spindler*

*Co. v. Genesco,*   747 F.2d 253, 258 (4th Cir.1984); *Assoc. of Westinghouse Salaried Emp. v.*

*Westinghouse Elec. Corp.,* 283 F.2d 93, 96 (3rd Cir.1960)."

### B)     Governmental Interest and Narrowly Tailored

109.     Here as elsewhere, Defendants have failed and more importantly, made no attempt,

 whatsoever, to show that the Framework's racial classification in the instant Claims Resolution

Process was ""necessary to further a compelling governmental interest' and "narrowly tailored to

that end." Johnson v. California, 543 U. S. 499, 514 (2005) (quoting Grutter, supra, at 327). This

most exacting standard "has proven automatically fatal" in almost every case. Jenkins, supra, at

121 (THOMAS, J., concurring). And rightly so. "Purchased at the price of immeasurable human

suffering, the equal protection principle reflects our nation's understanding that [racial]

classifications ultimately have a destructive impact on the individual and our society." Adarand

Constructors, Inc. v. Pena, 515 U. S. 200, 240 (1995) (THOMAS, J., concurring in part and

concurring in judgment). "The Constitution abhors classifications based on race" because "every

time the government places citizens on racial registers and makes race relevant to the provision

---

5  Black farm claimant Robert L. Mosby, Tracking Number: 85434, was denied on May 8, 2015,
for, among other things, "…failure to provide sufficient documentation, or the documentation
that was provided was not sufficient to meet the requirements under the Framework." See
attached Exhibit N.

of burdens or benefits, it demeans us all." <u>Grutter</u>, <u>supra</u>, at 353 (THOMAS, J., concurring in part and dissenting in part).  USDA has not and cannot justify the disparate treatment between <u>Love</u>, <u>Garcia and</u> plaintiffs.

110.     The Equal Protection Clause guarantees every person the right to be treated equally by the [government] without regard to race. "At the heart of this [guarantee] lies the principle that the government must treat citizens as individuals, and not as members of racial, ethnic, or religious groups." <u>Missouri v. Jenkins</u>, 515 U. S. 70, 120-121 (1995) (THOMAS, J., concurring). "It is for this reason that we must subject all racial classifications to the strictest of scrutiny." Id.

111.     In order for a law to survive strict scrutiny under the Equal Protection Clause, the interest involved must be more than "important" - it must be <u>compelling</u>. And the law itself must be <u>necessary</u> in order to achieve the objective - if there is any less discriminatory means of achieving the goal, the law will be struck down. See, e.g., <u>Loving v. Virginia,</u> 388 U.S. 1, 11 (1967). The requirement of necessity manifests itself in that courts require that the law be narrowly tailored to meet the objective. See, <u>Nunez v. City of San Diego</u>, 114 F. 3d 935, 946 (9th Cir. 1997). As a practical matter, it is rare for a law to survive strict scrutiny review, and the last time a law involving discrimination on the basis of national origin or race survived strict scrutiny was in 1944. See <u>Korematsu v. U.S.,</u> 323 U.S. 214 (1944).

112.     Hereto, the Defendants, USDA and EPIQ have offered no explanation and/or rational supporting a "permissible governmental objective" for not adjudicating the claims of African American farmers and ranchers; Earnest Lee Boyland, David Shelton and Lee Sylvester Caldwell with the claims of Hispanic males and women.  The racial discrimination visited upon Black males by USDA during the relevant time period (1981 through 2000) was found by congress and the courts to be the same discrimination visited upon Hispanic males and women

farmers and ranchers.  The government's resolve to pay Hispanic and women farmers is an

important mandate and objective for both Secretary Vilsack and the President Obama to achieve.

However, this resolve does not — in and of itself — provides a compelling and necessary

argument for excluding Black males who have suffered the same fate (racial discrimination) as

Hispanic and women farmers and ranchers from the Claims Resolution Process.   <u>Loving</u>, supra

at 11.

113.    To be sure, Secretary Vilsack's announcement is replete with references to the fact that

the Hispanic and women impending claim process was fashioned and similar to the

discrimination's claims process filed by African America farmers (Pigford I) and Native

American (Keepseagle) ranchers in his announcement:

> When I was sworn in as Secretary of Agriculture two years ago, President
> Obama and I made a commitment to mend USDA's troubled civil rights
> record. Since then, we have taken comprehensive action to turn the page on
> past discrimination. Last year we entered into a settlement with black farmers
> in Pigford II to address pending claims, and finalized a historic settlement
> agreement with Native American farmers under Keepseagle that faced
> discrimination by USDA.

114.    The Secretary's own words ("…to mend USDA's troubled civil rights records) make it

abundantly clear that all of the pending claims for socially disadvantaged farmers and ranchers

have (a) been the victims of civil rights violations by USDA and accordingly, (b) be allowed to

"enter" into a settlement with USDA.

### C)    Private Right Of Action

115.    Plaintiffs, Earnestine Bonner, Cario A. Armstrong and Isadore Caldwell, on behalf of

themselves and/or the herein representative estates maintain that they have a private right of

action to have the herein Complaint for violation of their right heard by a Court of competent

jurisdiction.  Cannon, supra. Before concluding that Congress intended to make a remedy

available to a special class of litigants, a court must carefully analyze the following four factors

that *Cort v. Ash, 422 U.S. 66,* identifies as indicative of such an intent: (1) whether the statute

was enacted for the benefit of a special class of which the plaintiff is a member, (2) whether

there is any indication of legislative intent to create a private remedy, (3) whether implication

of such a remedy is consistent with the underlying purposes of the legislative scheme, and (4)

whether implying a federal remedy is inappropriate because the subject matter involves an area

basically of concern to the States.

> (b) The first factor is satisfied here since Title IX explicitly confers
> a benefit on persons discriminated against on the basis of sex, and
> petitioner is clearly a member of that class for whose special
> benefit the statute was enacted.

> (c) As to the second factor, the legislative history of Title IX rather
> plainly indicates that Congress intended to create a private cause of
> action. Title IX was patterned after Title VI of the Civil Rights Act
> of 1964, and the drafters of Title IX explicitly assumed that it
> would be interpreted and enforced in the same manner as Title VI,
> which had already been construed by lower federal courts as
> creating a private remedy when Title IX was enacted.

> (d) The third factor is satisfied, since implication of a private
> remedy will not frustrate the underlying purposes of the legislative
> scheme but, instead, will assist in achieving the statutory purpose
> of providing individual citizens effective protection against
> discriminatory practices.

> (e) As to the fourth factor, since the Civil War, the Federal
> Government and the federal courts have been the primary and
> powerful reliances in protecting citizens against invidious
> discrimination of any sort, including that on the basis of sex.
> Moreover, it is the expenditure of federal funds that provides the
> justification for this particular statutory prohibition.

First, all of the Plaintiffs in the instant Claims Process are [persons for whom the Appropriations,

Rural Development and Administrative Act, Pub. Law 105-277 [§741, codified at 7 U.S.C. §

2279 note ("§741")], or the Food, Conservation Act of 2008, §4011 (socially disadvantaged

farmers and ranchers)] for whom the statutes conferred a benefit to.  Second, Title VI has already

been construed by federal courts as creating a private remedy (Cannon, supra).  Third, the

implication of a private remedy will not frustrate the underlying purpose of the legislative

scheme but, instead, will assist in achieving the statutory purpose of providing individual citizens

effective protection against discriminatory practices. Id.

Fourth, Plaintiff, are asking the federal courts to protect them from the invidious

discrimination being visited upon them by Defendants, USDA and EPIQ in the instant

Claims Resolution Process because of their race and gender.

116.    In sum, Plaintiffs have been damaged by defendants' actions, have no adequate remedy

at law and have been irreparably harmed by defendants' violation of their Constitutional   rights.

Plaintiffs seek an injunction and a suspension of payments prohibiting defendants from

continuing to utilize the Framework and mandating the inclusion of Plaintiffs' class in any claims

process.

117.    The claim procedures established here by USDA have not been subjected to strict

 scrutiny, nor has a judicial determination been made that the procedures have been narrowly

tailored and/or an important governmental interest.  Consequently, Plaintiffs, Earnest Lee

Boyland, Davis Shelton and Lee Sylvester Caldwell have received injury-in-fact from the

Defendants, USDA and EPIQ's Voluntary Claims Process.

## COUNT VI —-TERMINATION OF FUNDS TO
## DEFENDANT, EPIQ BY SECRETARY VILSACK

118.    Plaintiffs reassert and incorporate that which is set forth within Paragraphs 1

through 117 hereof as if fully restated herein.

119.    The unconstitutional acts of Defendants, EPIQ requires that the Defendant,

Department of Agriculture should be required to terminate the payment of funds to Defendant,

EPIQ. Grove, *supra.*

120.    Case law upholding parallel regulations and enforcement measures under

Title VI of the Civil Rights Act of 1964 bolsters our conclusion that 901 gives the Department

authority to terminate funding when a recipient fails to comply with the assurance requirement.

902 was patterned after 602 of the 1964 Act and the wording of the two provisions is virtually

identical.33, Id.

121.    In Gardner v. State of Alabama, 385 F.2d 804 (5th Cir. 1967), cert. denied,

389 U.S. 1046, 88 S.Ct. 773, 19 L.Ed.2d 839 (1968), HEW had terminated  approximately

$1,000,000 of funds under five separate federal assistance programs after the State of Alabama

failed to execute an Assurance that it would undertake efforts to end racial discrimination in

federal assisted programs. Id.  Moreover, The Court concluded that "the Secretary in issuing (the

assurance) regulation was clearly acting within its (sic) rule making power conferred upon it (sic)

by statute."  385 F.2d at 817 n.8.  See also United States v. El Camino Community College Dist.,

600 F.2d 642 (1980) ("in exercising its investigatory powers … HEW must have substantial

latitude in scrutinizing policies and practices of the institution that nay have a discriminatory

impact on the intended beneficiaries of assistance").

## VII.      PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that the court enter judgment as follows:

a.  That this Court certify this action as a class action under Rule 23(b)(1), 23(b)(2) and

23(b)(3);

b.  That this Court declare that Defendants actions violate Title VI and the Equal Protection

Clause;

c.  Immediate issuance of a temporary restraining order, followed by a preliminary

injunction, and ultimately by a permanent injunction, commanding Defendants, USDA

and EPIQ to allow Plaintiffs and other similarly situated claimants to participate in the

Claims Resolution Process

d.  That the Court would Order a termination of payments to Defendant, EPIQ as a recipient
of federal funds from and/or through Defendant, USDA.

e.  That the Court enters judgment of the amount of $1.8 Billion Dollars against Defendants.

f.  That this Court award to Plaintiffs reasonable costs and attorneys' fees; and

g.  That this Court grants such other relief as may be just and proper.

h.  Plaintiffs request a Jury Trial to hear this case.


/s/ Paul Robinson, Jr.
Paul A. Robinson, Jr. 014464
5 North Third, Ste. 2000
Memphis, TN 38103
901-649-4053
Counsel for Black Farmers and
Agriculturalist Association, Inc.

January 13, 2012

# FRAMEWORK FOR HISPANIC OR FEMALE FARMERS' CLAIMS PROCESS

## I.   PURPOSE

The United States is establishing a voluntary administrative claims process (Claims Process) for farmers who submit timely claims alleging discrimination by USDA, due to their being Hispanic or female, in responding to their applications for farm loans or loan servicing from 1981 to 2000.[1]

### A. Cash Payments and Other Relief

Successful claimants will be eligible for a cash payment and debt relief on eligible farm-loan debt.  Some claimants will also be eligible for tax relief as described below. Claimants must elect to proceed under one of the following Tiers, each of which has different requirements and potential awards.

#### 1.   Tier 2 Payments

A Tier 2 payment of $50,000, plus tax relief on that award and debt relief from USDA on eligible farm loans, is available to those claimants who apply for such a payment, submit certain documentation, and prove the claim by substantial evidence, as provided in Section VIII.  There is no limit to the number of claimants who may qualify for Tier 2 payments, and no cap on the aggregate dollar amount of awards that may be paid to prevailing claimants under Tier 2.  While there is no cap, if the total amounts paid under Tier 2 are less than $100 million, the balance will be available for awards under Tier 1(a). There is a cap on the total dollar amount of debt relief for prevailing claimants as specified in paragraph D below.  Claimants who fail to prove their Tier 2 claims will automatically be reviewed for a Tier 1(a) payment.

#### 2.   Tier 1 Payments – Tier 1(a) and Tier 1(b)

Tier 1(a)

A Tier 1(a) payment is available to any claimant who lacks certain documentation regarding his or her claim but can prove the claim by substantial evidence.  Each successful Tier 1(a) claimant will receive a cash award of up to $50,000,  as provided in Section VIII, plus tax relief on that award, and debt relief from USDA on eligible farm loans.  Total payments of cash awards and tax relief under Tier 1(a) are subject to a cap of $1.13 billion, plus the balances, if any, from the $100 million funds described in paragraphs 1 and 3.  The cash award for each successful claimant will be the same dollar amount.  Due to the total cap, the dollar amount may be reduced pro rata from $50,000

---

[1] See Section VIII below for the Relevant Period when claimants must have farmed or attempted to farm for this Program to apply.

*Exhibit A*

1

**CLAIM FORM**
**USDA Hispanic & Women**
**Farmers and Ranchers**

For questions, call us toll-free
at 1-888-508-4429
THE CLAIMS DEADLINE IS MARCH 25, 2013

## PART 3 CLAIM INFORMATION

We need to know more about you and your farm to process your claim.

### A. IDENTITY

1. Are you Hispanic/ Latino? ☐ Yes ☐ No

2. Are you female? ☐ Yes ☐ No

### B. WHEN DID YOU OPERATE, OR TRY TO OPERATE, A FARM?

1. If you are Hispanic/Latino or female, did you farm, or try to farm, between January 1, 1981, and December 31, 1996? ☐ Yes ☐ No

2. If you are Hispanic/Latino, did you farm, or try to farm, between October 13, 1998, and October 13, 2000? ☐ Yes ☐ No

3. If you are female, did you farm, or try to farm, between October 19, 1998 and October 19, 2000? ☐ Yes ☐ No

4. If you answered "Yes" to any part of Question B above, please describe your farming operation or your effort to farm, including the type and amount of crops and/or livestock. (Attach additional pages if necessary):

_____    **See attached affidavit, marked as**
_____    **Exhibit "A" at pages no.** _____

### C. WHEN AND WHERE DID YOU OWN OR RENT, OR TRY TO OWN OR RENT, FARM LAND?

1. If you are Hispanic/Latino or female, did you own or rent, or try to own or rent, farm land between January 1, 1981, and December 31, 1996? ☐ Yes ☐ No

2. If you are Hispanic/Latino, did you own or rent, or try to own or rent, farm land between October 13, 1998, and October 13, 2000? ☐ Yes ☐ No

3. If you are female, did you own or rent, or try to own or rent, farm land between October 19, 1998, and October 19, 2000? ☐ Yes ☐ No

4. Please check each box that applies:  ☐ Owned  ☐ Tried to Own  ☐ Rented  ☐ Tried to Rent

5. If you answered "Yes" to any part of Question C above, please describe in detail the farm land that you owned or rented or tried to own or rent, including the a) location (the full address, the crossroads, and/or the legal description), b) the type of land, and c) the acreage. (Attach additional pages if necessary).

_____    **See attached affidavit, marked as**
_____    **Exhibit "A" at pages no.** _____

6. If available, please provide any documentation showing that you owned or rented the farm land such as a deed, a lease, an easement, a purchase agreement, equipment receipts, or other proof. (Attach additional pages if necessary).

_____
_____                    *Exhibit B*

If you answered "No" to all the questions in Questions A, B & C above, yo
claims process.

USDA Hispanic & Women Farmers and Ranchers Claims A

**CLAIM FORM**
USDA Hispanic & Women
Farmers and Ranchers



*592809626589*

For questions, call us toll-free
at **1-888-508-4429**
THE CLAIMS DEADLINE IS MARCH 25, 2013

## PART 1. CLAIMANT INFORMATION

### Claimant Information

A. Please provide the following information regarding the person who seeks to participate in this claims process ("claimant").

First Name: `Earnest`   MI: `L`   Last Name: `Boyland`

Business Name, if applicable:

Mailing address, including apartment, unit or box number: `130 Belmont Rd`

City: `Mason`   State: `TN`   Zip: `38049`

SSN or Taxpayer ID Number: `409345931`   Date of Birth:

Phone Number: `901 - 465 - 9870`   Alternate Phone Number:

Email Address (optional):

B. Please attach a photocopy of two (2) forms of identification for the claimant. A list of Acceptable Forms of Identification can be found in your Claims Package at Attachment 5.

C. Is Claimant:  ☒ Dead   OR  ☐ Unable to submit a claim because of a disability   If either, complete Submitter Information section below.

### Submitter Information

If you are submitting a claim for a claimant who is dead or unable to submit a claim due to a disability, please provide information regarding the claimant in the section above and also provide the following information regarding yourself here.

First Name: `ERNESTINE`   MI:   Last Name: `Bonner`

Business name, if applicable:

Mailing address, including apartment, unit or box number: `130 Belmont Rd`

City: `Mason`   State: `TN`   Zip: `38049`

SSN or Taxpayer ID Number: `414848428`   Date of Birth: `12 - 05 - 1946`

Phone Number: `901 - 465 - 9870`   Alternate Phone Number:

Email Address (optional):

Exhibit C

In Complete Response

EXHIBIT A

STATE OF _____ COUNTY/PARISH OF _____

AFFIDAVIT OF **ERNESTINE BONNER** _____ SSN: _____

CLAIMANT **EARNEST L BOYLAND** RELATION TO: **DAUGHTER** _____

CASE/TRACKING NO. _____ MEMBER NO. _____

I, **ERNESTINE BONNER** , being first duly sworn, upon oath, under penalties of perjury, hereby depose and say:

1.      That your Affiant currently resides at **130 BELMONT RD** _____

City **MASON** _____ State **TN** _____ Zip Code **38049**

2.      That your Affiant/Deponent files this affidavit as a "Claimant and/or Submitter" as set forth in the "Framework for Hispanic or Female Farmers' Claims Process" (Framework), that the United States has established a voluntary administrative Claims Process to resolve claims of certain Hispanic and/or female farmers who allege discrimination by the USDA in responding to applications for farm loans or loan servicing (credit-related discrimination) during certain times.

Moreover, Section 14011 (SENSE OF CONGRESS RELATING TO CLAIMS BROUGHT BY SOCIALLY DISADVANTAGED FARMERS OR RANCHERS) states in pertinent parts: It is the sense of Congress that all pending claims and class actions brought against the Department of Agriculture by socially disadvantaged farmers or ranchers (as defined in section 355(e) of the Consolidated Farm and Rural Development Act (7 U.S.C. 2003(e)), including Native American, Hispanic, and female farmers or ranchers, based on racial, ethnic, or gender discrimination in farm program participation should be resolved in an expeditious and just manner.

3.      That your ("**CLAIMANT**") died a resident citizen of the State of **TN** _____.
See Attached Certificate of Death marked as Exhibit **1**__.

Exhibit D

1

STATE OF _____ COUNTY/PARISH OF _____

AFFIDAVIT OF **ERNESTINE BONNER** SSN: _____

CLAIMANT **EARNEST L BOYLAND** RELATION TO: **DAUGHTER**

CASE/TRACKING NO. _____ MEMBER NO. _____

4.   That your (**"CLAIMANT"**) was denied the constitutional right of being notified of the Black Farmers lawsuit; as originally certified by this Honorable Court on April 14, 1999; that the subsequent congressional passage of the Food, Conservation, and Energy Act of 2008 (June 18, 2008) intends that this (**"CLAIMANT"**) should be included in the class of claimants otherwise being able to show that I/he was a victim of racial discrimination by USDA during the relevant time period; therefore have a meritorious claim for consideration by the Adjudicator(s) in this current matter as set forth in No. 2, hereinabove.

5.   That your (**"CLAIMANT"**) has a legal and constitutional right to have this Affidavit attached to the **CLAIM FORM** or any other application and/or **FORM**(s) to be submitted to the Adjudicator(s) in this matter.

6.   Your (**"CLAIMANT"**) acknowledges that between January 1,1981 and December 31, 2000, the following type of federal farm program was applied for, *or attempted to apply*:

☑ *Operating Loan*        ☐ *Farm Ownership Loan*        ☐ *Emergency Loan*

☐ *Youth Operating Loan*  ☐ *Non-credit Benefit Program* ☐ *Soil and Water Loan*

☐ *Housing Loan*

7.   Your (**"CLAIMANT"**) either owned or leased, or attempted to own or lease, farm land.
   **In 1981 my father, Earnest Boyland, owned 100 acres of farmland in Mason, TN located in Fayette County, more specifically in the Bernard Community.**

2

STATE OF _____ COUNTY/PARISH OF _____

AFFIDAVIT OF **ERNESTINE BONNER**  SSN: _____

CLAIMANT **EARNEST L BOYLAND** RELATION TO: **DAUGHTER**

CASE/TRACKING NO. _____ MEMBER NO. _____

8.  Your ("CLAIMANT") applied for a specific *credit transaction* at a USDA county/Parish office during the period identified in ¶ 6 above;

> **In 1981 my father, Earnest Boyland, owned 100 acres of farmland in Mason, TN located in Fayette County on which he grew cotton and soybeans. He needed additional funds to purchase supplied and tools to plant, cultivate and harvest the crops. He visited the USDA office in Somerville, TN to apply for an operating loan through FmHA. The county supervisor with whom he spoke stated he did not qualify, and failed to provide him with an application.**

a.  The loan encumbered by *restrictive conditions*? *(Tier 1(b) and Tier 2 only).*

b.  USDA Did Not Provide Appropriate *Loan Services. (Tier 1(b) and Tier 2 only).*

c.  The loan was denied, provided late, approved for a lesser amount that requested, encumbered by restrictive conditions, or USDA failed to provide appropriate loan service, and such treatment was less favorable than that accorded specifically identified, similarly situated White farmers (*this White farmer information is for Tier 1(b) claimants only).*

*(continues on next page)*

3

STATE OF _____ COUNTY/PARISH OF _____

AFFIDAVIT OF **ERNESTINE BONNER** _____ SSN: _____

CLAIMANT **EARNEST L BOYLAND** RELATION TO: **DAUGHTER** _____

CASE/TRACKING NO. _____ MEMBER NO. _____

(i).........White farmer _____ received an operating and/or emergency loan: as per the filing of USDA's UCC-1 (Exhibit ___) and/or subordination of credit agreement (File No. _____) in and around the general time that claimant's request for a similar crop/ownership loan(s) was denied by the same USDA employees.

(ii).........White farmer _____ received an operating and/or emergency loan: as per the filing of USDA's UCC-1 (Exhibit ___) and/or subordination of credit agreement (File No. _____) in and around the general time that claimant's request for a similar crop/ownership loan(s) was denied by the same USDA employees.

(iii).........White farmer _____ received an operating and/or emergency loan: as per the filing of USDA's UCC-1 (Exhibit ___) and/or subordination of credit agreement (File No. _____) in and around the general time that claimant's request for a similar crop/ownership loan(s) was denied by the same USDA employees.

9.     **NARRATIVE STATEMENT:**

If you are asserting an ECOA (Equal Credit Opportunity Act - 15 U.S.C. Section 1691) claim, explain below, in your own words, the relationship between the act or acts of discrimination which you allege above and how you suffered economic damages.

**In 1981 my father, Earnest Boyland, owned 100 acres of farmland in Mason, TN located in Fayette County on which he grew cotton and soybeans. He needed additional funds to purchase supplied and tools to plant, cultivate and harvest the crops. He visited the USDA office in Somerville, TN to apply for an operating loan through FmHA. The county supervisor with whom he spoke stated he did not qualify, and failed to provide him with an application. My father was the son of lifelong farmers, raised on a farm and also farmed for a living. A copy of his Certificate of Death is attached as Exhibit 1. My father was discriminated against by the USDA and suffered economic loss as a result.**

4

STATE OF _____ COUNTY/PARISH OF _____

AFFIDAVIT OF **ERNESTINE BONNER** SSN: _____

CLAIMANT **EARNEST L BOYLAND** RELATION TO: **DAUGHTER** ____

CASE/TRACKING NO. _____ MEMBER NO. _____

10.   USDA's treatment of the loan application led to *economic damage* to the class member.

   **Economic damages are as follow:**

   **Cotton**        **50 acres x 750 lbs x .70 = $26,250**

   **Soybeans**      **50 acres x 40 bushels x 7.00 = $14,000**

   **Total loss: $40,250**

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

Dated this ___7th___ day of ___Oct___ , 20 _2013_

_Ernestine Bonner_        _Ernestine Bonner_
Print name                       Affiant's Signature

SUBSCRIBED and SWORN to before me:

_____
NOTARY PUBLIC in and for said County and State

SIGNATURE OF NOTARY _Charles D Brewer Jr_

My Commission Expires: _4/26/2017_ , 20___

5

**STATE OF TENNESSEE**
**Office of Vital Records**

FAYETTE COUNTY HEALTH DEPARTMENT
SOMERVILLE, TENNESSEE 38068
901-465-5243   465-5244

**CERTIFICATE OF DEATH**

DECEDENT'S NAME: Farmer  Lee  Boyland    DATE OF DEATH: May 13, 2010

SOCIAL SECURITY NUMBER    AGE: 90    DATE OF BIRTH: Sept 23, 1919    BIRTHPLACE: Fayette County, TN

FACILITY NAME: 720 Bernard Road    COUNTY OF DEATH: Fayette

CITY, TOWN OR LOCATION OF DEATH: Arlington Develop. Center

MARITAL STATUS: Widowed    SURVIVING SPOUSE: N/A    USUAL OCCUPATION: Developmental Tech

RESIDENCE STATE: TN    COUNTY: Fayette    CITY: Mason    STREET: 720 Bernard Rd

ZIP: 38049    RACE: Black    EDUCATION: 12th

FATHER'S NAME: Len Boyland    MOTHER'S NAME: Lily Harvill

INFORMANT'S NAME: Ernestine Boyland Bonner    RELATIONSHIP: Daughter    ADDRESS: 130 Belton Rd. Mason, TN 38049

METHOD OF DISPOSITION: Burial    PLACE OF DISPOSITION: Williamson Chapel Memorial Gardens    LOCATION: Mason

SIGNATURE OF EMBALMER: Debbie Butler    6073    Donna Rogers    4187

NAME AND ADDRESS OF FUNERAL HOME: Palmer Funeral Home    P. O. Box 36 Mason, TN 38049    527

REGISTRAR'S SIGNATURE: Annie B. Hunt-Simon D.R.    DATE FILED: May 25, 2010

CERTIFIER SIGNATURE    LICENSE NUMBER: MD3843900    DATE SIGNED: 5/13/10

NAME AND ADDRESS OF CERTIFIER (PHYSICIAN OR MEDICAL EXAMINER):
Dr. Thomas Meriwether 6141 Walnut Grove Memphis, TN 38120    PH (901) 767-6767

CAUSE OF DEATH:
Aspiration pneumonia    1 wk
Adult failure to thrive syn.    2 yr.

*EXHIBIT 1*

I hereby certify the above to be a true and correct copy of the original document on file in this department. This certified copy is valid only when printed on security paper showing the red embossed seal of the Department of Health. Alteration or erasure voids this certification.

Tennessee Code Annotated 68-3-201 et seq. Vital Records Act of 1977

4165087

Teresa S. Hendricks,    Linda L. Jones    Date Issued
STATE REGISTRAR    Fayette County Health Department

*Exhibit E*

*USDA Hispanic & Women Farmers and Ranchers*
Claims Administrator
PO Box 4540
Portland, OR 97208-4540

||||||||||||||||||||||||||||||    592806172199

000 0000047 00000000 001 001 00047 JOJ: 0 0
ESTATE OF EARNEST L BOYLAND
C/O ERNESTINE BONNER
130 BELMONT RD
MASON, TN 38049

Tracking Number: 119783

July 17, 2013

Re:     Ineligibility for Claims Resolution Process

Dear Estate Of Earnest L Boyland,

Thank you for your interest in the Hispanic and Women Farmers and Ranchers Claims Resolution Process. To participate in this Process, you must be either Hispanic/Latino or female. On your Claim Form, you indicated that you are an African American male. As a result, you are not eligible to participate in this Claims Resolution Process, and your claim has been DENIED.

If you have any questions, please contact us at 1-888-508-4429 or visit the website at www.farmerclaims.gov.

Sincerely,

Claims Administrator

*Exhibit F*

Exhibit G

*592803447558* 5 (CArio)
# 110798 (OAnd)

For questions, call us toll-free at 1-888-508-4429
THE CLAIMS DEADLINE IS MARCH 25, 2

## PART 1. CLAIM INFORMATION

### Claimant Information

A. Please provide the following information regarding the person who seeks to participate in this claims process ("claimant").

First Name: D A V i d

MI: L

Last Name: S h e l t o n

Business Name, if applicable:

Mailing address, including apartment, unit or box number: 8 0 6 E a g l e s N e s t D r i v e

City: B y r a m

State: M S

Zip: 3 9 2 7 2

SSN or Taxpayer ID Number: 4 2 6 4 5 9 4 4 7

Date of Birth: 0 8 - 0 2 - 1 9 8 2

Phone Number: 6 0 1 - 6 0 6 - 8 7 7 8

Alternate Phone Number: 6 0 1 - 3 7 1 - 2 7 0 9

Email Address (optional): C a r m s t r o n g @ c s p i r e . c o m

B. Please attach a photocopy of two (2) forms of identification for the claimant. A list of Acceptable Forms of Identification can be found in your Claims Package at Attachment 5.

C. Is Claimant: ☒ Dead OR ☐ Unable to submit a claim because of a disability. If either, complete Submitter Information section below.

### Submitter Information

If you are submitting a claim for a claimant who is dead or unable to submit a claim due to a disability, please provide information regarding the claimant in the section above and also provide the following information regarding yourself here.

First Name: C a r i o

MI: A

Last Name: A r m s t r o n g

Business name, if applicable:

Mailing address, including apartment, unit or box number: 8 0 6 E a g l e s N e s t D r i v e

City: B y r a m

State: M S

Zip: 3 9 2 7 2

SSN or Taxpayer ID Number: 4 2 6 4 5 9 4 4 7

Date of Birth: 0 8 - 0 2 - 1 9 8 2

Phone Number: 6 0 1 - 6 0 6 - 8 7 7 8

Alternate Phone Number: 6 0 1 - 3 7 1 - 2 7 0 9

Email Address (optional): C a r m s t r o n g @ c s p i . r e . c o m

Exhibit H



*592803897558*

STATE OF _____    COUNTY OF _____

AFFIDAVIT OF:  CARIO A. AMSTRONG         SSN: _____

VICTIM:  DAVID L. SHELTON              RELATION TO:  GRANDSON

CASE NO:                           MEMBER NO:

I, **CARIO A. ARMSTONG**, being first duly sworn, upon oath, under penalties of perjury, hereby

depose and say:

1.      That your Affiant currently resides at: **806 EAGLE NEST DRIVE, BYRAM, MISSISSIPPI 39272.**

2.      That your Affiant files this affidavit as a "Claimant and/or heir of Claimant"), hereinafter

("CLAIMANT") regarding the subject matter of **In RE BLACK FARMERS DISCRIMINATION**

LITIGATION, Consolidated Case No: 08-cv-0511 (PLF), hereinafter **"PIGFORD II."**

**3. That your victim died a resident citizen of the state of MISSISSIPPI. See**

**Attached Certificate of Death marked as Exhibit #__1__.**

4. That your ("CLAIMANT") was denied the constitutional right of being notified of the Black

Farmers lawsuit; as originally certified by this Honorable Court on April 14, 1999; and that the subsequent

congressional hearing (November 18, 2004 and the passage of the Food, Conservation, and Energy Act of

2008 on May 22, 2008) intend that this ("CLAIMANT") should be included in the class of claimants

otherwise being able to show that I/he was a victim of racial discrimination by USDA during the relevant time

period and, therefore have a meritorious claim for consideration by the Adjudicator(s) in the this current

matter as set forth by the Consent Decree of this Lawsuit and more specifically ¶ 9 and its pertinent parts.

5.      That your ("CLAIMANT") has a legal and constitutional right to have this Affidavit attached

to the **CLAIM SHEET AND ELECTION FORM** or any other application or any other **FORM**(s) to be



*592803897558*

**STATE OF** _____   **COUNTY OF** _____

**AFFIDAVIT OF:**  CARIO A. AMSTRONG _____   **SSN:** _____

**VICTIM:**  DAVID L. SHELTON _____   **RELATION TO:** _____ **GRANDSON** _

**CASE NO:** _____   **MEMBER NO:** _____

submitted to the Adjudicator(s) all in accordance to ¶ 9 (a) (i)  ("……. material required to be submitted by

the class member……..").

6.  Between January 1, 1981 and December 31, 1996, the following type of federal farm program
was applied for.

Operating Loan ____x____  Farm Ownership Loan _____  Emergency Loan ___x_____

Conservation Loan _____ or Non-credit Benefit Program _____

7.  That pursuant to ¶ 9 (a) (i) to wit:

(A).  he owned or leased, or attempted to own or lease, farm land;

**………….In 1981 my grandfather tried to buy approximately 60 acres of
farmland in Lowndes County, Mississippi.  This tract of farmland was
located in the Crawford Community off Highway 45 Alternate South and the
Starksville Road area. This was the same land that was being farmed by
his father, Josh Shelton, Jr. for years.**

(B)  he applied for a specific credit transaction at a USDA county office during the period

identified in ¶ 2 (a), above;

**……….In January of 1981, my grandfather both worked off the farm as a
truck driver and he was growing some soybeans on the land herein above
described as a part time farmer.  He tried to get the folks at the local USDA
office to let him have some money to keep the farm in production.
However, they told him that he should have been able to finance this about
of crop own his own and would not qualify for a loan application. He then
went to one of the local farmer's co-op and purchased some seeds and
chemicals from them. The people at USDA would not let him fill out an
application for a farm operation loan to buy some chemical and seeds. He**



*592803897558*

STATE OF _____   COUNTY OF _____

AFFIDAVIT OF:  CARIO A. AMSTRONG _____   SSN: _____

VICTIM: DAVID L. SHELTON _____   RELATION TO: _____ GRANDSON _____

CASE NO: _____   MEMBER NO: _____

loan application. After 1983 he was not able to farm with out low interest rate credit and let a relative have access to the farm that had been farmed by he and his father for years and years.

**(C)** Loan Encumbered by Restrictive Conditions
Explain the conditions/restrictions applied to your loan or program benefit.

..........**Loan was denied**

USDA Did Not Provide Appropriate Loan Services
Explain in detail.

..........**The loan was denied.**

(D)   the loan was denied, provided late, approved for a lesser amount that requested, encumbered by restrictive conditions, or USDA failed to provided appropriate loan service, and such treatment was less favorable that that accorded specifically identified, similarly situated white farmers; and

**For A).........White (female) farmer SAUNDERS B. CARSON JR received an operating and/or emergency loan: as per the filing of USDA's UCC-1 (Exhibit # 2 ) and/or subordination of credit agreement (File No._____) in and around the general time that my granddaddy's request for a similar crop/ownership loan(s) was denied by these same USDA employees.**

**For (B).........White (female) farmer DENNIS W. ENSZ received an operating and/or emergency loan: as per the filing of USDA's UCC-1 (Exhibit # 3 ) and/or subordination of credit agreement (File No._____) in and around the general time that my granddaddy's request for a similar crop/ownership loan(s) was denied by these same USDA employees.**



*592803897558*

STATE OF _____   COUNTY OF _____

AFFIDAVIT OF: CARIO A. AMSTRONG _____   SSN: _____

VICTIM: DAVID L. SHELTON _____   RELATION TO:_____ GRANDSON

CASE NO: _____   MEMBER NO: _____

**For (C) .........White (female) farmer JOHN R. CANULL received an operating and/or emergency loan: as per the filing of USDA's UCC-1 (Exhibit #__4__) and/or subordination of credit agreement (File No._____) in and around the general time that my granddaddy's request for a similar crop/ownership loan(s) was denied by these same USDA employees.**

8.   NARRATIVE STATEMENT:
If you are asserting an ECOA claim, explain below, in your own words, the relationship between the act or acts of discrimination which you allege above and how you suffered economic damages.

**........My mother's (Shelia Willis) father, David L. Shelton was indeed a life long farmer. He had been farming a 40 acre tract of land that had been farmed by him and his father for years and years. He also worked as a truck driver and farmers as well. In 1980 he suffered from the effects of the draught of 1980 and tried to get some credit in 1981 and 1982. He was denied an application both times.   He eventually turned this tract of farmland over to a relative because he could never get the FmHA to let him have any credit. The three white farmers were all able to get some financial help from the government but my grandfather was not. He was treated badly by the employees at USDA.**

9.   USDA's treatment of the loan application led to economic damage to the class member.

**My grandfather's economic damages are as follows:**

**60 acres of soybeans x 40 x $7.00/bu=$16,800.00**

**Total=$16,800.00**



STATE OF _____     COUNTY OF _____

AFFIDAVIT OF: CARIO A. Armstrong     SSN: _____

VICTIM: DAVID L. SHELTON _____     RELATION TO: _____ GRANDSON _____

CASE NO: _____     MEMBER NO: _____

9.     USDA's treatment of the loan application led to economic damage to the class member.

**My grandfather's economic damages are as follows:**

**40 acres of soybeans x 40 x $7.00/bu=$11,200.00**
**60 acres valued at $800.00/acre=$48,000.00**

     **Total=$59,200.00**

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

Dated this ___14th___ day of ___March_____, 20 _13_

_Cario A. Armstrong_          _Cario A. Armstrong_
Print name                    Affiant's Signature

SUBSCRIBED and SWORN to before me:

_____
NOTARY PUBLIC in and for said County and State

SIGNATURE OF NOTARY _Sheila A. Willis_

My Commission Expires: ___Oct. 7_____, 20 _15_

*USDA Hispanic & Women Farmers and Ranchers*
Claims Administrator
PO Box 4540
Portland, OR 97208-4540

592806174203

Tracking Number: 135421

000 0000259 00000000 001 001 00259 ⊐⊐: 0 0
DAVID L SHELTON, DECEASED
C/O CARIO A ARMSTRONG
806 EAGLES NEST DRIVE
BYRAM, MS 39272

July 17, 2013

Re:     Ineligibility for Claims Resolution Process

Dear David L Shelton, Deceased,

Thank you for your interest in the Hispanic and Women Farmers and Ranchers Claims Resolution Process. To participate in this Process, you must be either Hispanic/Latino or female. On your Claim Form, you indicated that you are an African American male. As a result, you are not eligible to participate in this Claims Resolution Process, and your claim has been DENIED.

If you have any questions, please contact us at 1-888-508-4429 or visit the website at www.farmerclaims.gov.

Sincerely,

Claims Administrator

*Exhibit I*



*592804117956*

**CLAIM FORM**
USDA Hispanic & Women
Farmers and Ranchers

For questions, call us toll-free
at 1-888-508-4429
THE CLAIMS DEADLINE IS MARCH 25, 2013

## PART 1: CLAIMANT INFORMATION

### Claimant Information

A. Please provide the following information regarding the person who seeks to participate in this claims process ("claimant").

First Name: L E E     MI: S     Last Name: C A L D W E L L

Business Name, if applicable:

Mailing address, including apartment, unit or box number: P O  B O X  1 6 4 0 6 2

City: L I T T L E  R O C K     State: A R     Zip: 7 2 2 1 6

SSN or Taxpayer ID Number: 4 3 2 8 6 2 3 1 7     Date of Birth: 0 4 - 0 5 - 1 9 4 5

Phone Number: 5 0 1 - 3 7 6 - 3 3 9 4     Alternate Phone Number: 5 0 1 - 5 8 4 - 6 5 9 6

Email Address (optional):

B. Please attach a photocopy of two (2) forms of identification for the claimant. A list of Acceptable Forms of Identification can be found in your Claims Package at Attachment 5.

C. Is Claimant: [X] Dead  OR  [ ] Unable to submit a claim because of a disability     If either, complete Submitter Information section below.

### Submitter Information

If you are submitting a claim for a claimant who is dead or unable to submit a claim due to a disability, please provide information regarding the claimant in the section above and also provide the following information regarding yourself here.

First Name: I S A D O R E     MI: J     Last Name: C A L D W E L L

Business name, if applicable:

Mailing address, including apartment, unit or box number: P O  B O X  1 6 4 0 6 2

City: L I T T L E  R O C K     State: A R     Zip: 7 2 2 1 6

SSN or Taxpayer ID Number: 4 3 2 8 6 2 3 1 7     Date of Birth: 0 4 - 0 5 - 1 9 4 5

Phone Number: 5 0 1 - 3 7 6 - 3 3 9 4     Alternate Phone Number: 5 0 1 - 5 8 4 - 5

Email Address (optional):

*Exhibit J*

USDA Hispanic & Women Farmers and Ranchers Claims Adn.

STATE_____ COUNTY_____

AFFIANT **ISADORE CALDWELL**_____ SSN_____

VICTIM **LEE SYLVESTER CALDWELL**___ RELATION TO: **FATHER**

**EXHIBIT A**

I, **ISADORE CALDWELL**_____, being first duly sworn, upon oath, under

penalties of perjury, hereby depose and say:

1. That your Affiant currently resides at: **PO BOX 164062 LITTLE ROCK, AR**

**72216** .

2.     That your Affiant files this affidavit as a "Claimant and/or heir of Claimant"),

hereinafter **("CLAIMANT")** regarding the subject matter of **In RE BLACK FARMERS**

**DISCRIMINATION LITIGATION**, Consolidated Case No: 08-cv-0511 (PLF), hereinafter

**"PIGFORD II."**

3.     That the victim died a resident citizen of the state of _Arkansas_____ . See herein

attached Death Certificate marked as Exhibit #4.

4.     That your **('CLAIMANT")** was denied the constitutional right of being notified

of the Black Farmers lawsuit; as originally certified by this Honorable Court on April 14, 1999;

and that the subsequent congressional hearing (November 18, 2004 and the passage of the Food,

Conservation, and Energy Act of 2008 on May 22, 2008) intend that this **("CLAIMANT")**

should be included in the class of claimants otherwise being able to show that I/he was a victim

of racial discrimination by USDA during the relevant time period and, therefore have a

meritorious claim for consideration by the Adjudicator(s) in the this current matter as set forth by

the Consent Decree of this Lawsuit and more specifically ¶ 9 and its pertinent parts.

5.     That your **("CLAIMANT")** has a legal and constitutional

*Exhibit K*

Affidavit attached to the **CLAIM SHEET AND ELECTION FORM** or

STATE_____ COUNTY_____

AFFIANT **ISADORE CALDWELL**_____ SSN_____

VICTIM **LEE SYLVESTER CALDWELL**___ RELATION TO: **FATHER**_____

or any other **FORM(s)** to be submitted to the Adjudicator(s) all in accordance to ¶ 9 (a)

(i) ("………material required to be submitted by the class member…….").

6.     That pursuant to ¶ 9 (a) (i) to-wit:

    (A).   he owned or leased, or attempted to own or lease, farm land;

**…………In 1986 my father owned 40 acres of farmland in Phillips County, AR in the Postelle/Hicks Township off Hwy 49.**

    (B)   he applied for a specific credit transaction at a USDA county office during the period identified in ¶ 2 (a), above;

**………In 1986 my father owned 40 acres of farmland in the Postelle/Hicks Township of Phillips County, AR. He grew cotton and vegetables but needed additional cash to purchase seed, fertilizer, chemicals and farming tools. He visited the USDA office in Helena, AR to apply for an operational loan through FmHA but the representative with whom he spoke stated that he was too old to farm and he refused to provide him with an application.**

    **(C)** Loan encumbered by restrictive conditions; explain the conditions/restrictions applied to your loan or program benefit.

**The loan was denied.**

    USAD Did Not Provide Appropriate Loan Services; Explain in Detail.

**The loan was denied.**

    (D)   the loan was denied, provided late, approved for a lesser amount that requested, encumbered by restrictive conditions, or USDA failed to provided appropriate loan service, and such treatment was less favorable that that accorded specifically identified, similarly situated white farmers; and

STATE_____   COUNTY_____

AFFIANT **ISADORE CALDWELL**     SSN_____

VICTIM **LEE SYLVESTER CALDWELL**   RELATION TO: **FATHER**

For (A).......White farmer **WALTER SPARKS**_____received an operating and/or emergency loan: as per the filing of USDA's UCC-1 (Exhibit #1) and/or subordination of credit agreement in and around the general time that claimant's request for a similar crop/ownership loan(s) was granted by one of the same USDA employees who refused claimant's request for a credit application for loan benefits.

For (B).......White farmer **NORRIS WEBB**_____received an operating and/or emergency loan: or in the alternative the continuation and/or the subordination of credit, as per the filing of USDA's UCC-1-SEE ATTACHED EXHIBIT # 2 and/or subordination of credit agreement in and around the general time that claimant's request for a similar crop/ownership loan(s) was **DENIED** by one of the same USDA employees who refused claimant's request for a credit application for loan benefits.

For (C)..........White farmer **WALTER W. CAREY**_____ received an operating and/or emergency loan: as per the filing of USDA's UCC-1-SEE ATTACHED EXHIBIT # 3 and/or subordination of credit agreement in and around the general time that claimant's request for a similar crop/ownership loan(s) was **DENIED** by one of the same USDA employees who refused claimant's request for a credit application for loan benefits.

7.   Narrative Statement:
   If you are asserting an ECOA claim, explain below, in your own words, the relationship between the act or acts of discrimination which you allege above and how you suffered economic damages.

**My father was a lifelong farmer and the son/grandson of farmers. He owned 40 acres of farmland in Phillips, County AR on which he grew cotton and vegetables. In 1986 he visited the USDA office in Helena, AR to apply for an operational loan through FmHA as he needed additional funds to purchase seed,**

STATE_____   COUNTY_____

AFFIANT **ISADORE CALDWELL**          SSN_____

VICTIM **LEE SYLVESTER CALDWELL**     RELATION TO: **FATHER**

**chemicals, fertilizer and farming tools to plan, cultivate and harvest the crops. The representative with whom he spoke stated he was too old to farm and refused to provide him with an application. There were White farmers who received loan approvals during the same time period as I applied and they are listed as Exhibits 1, 2, & 3 of this document. He was discriminated against and suffered economic loss as a result.**

(E) USDA's treatment of the loan application led to economic damage to the class member.

**His economic damages are as follow:**

| | |
|---|---|
| **Cotton** | **30 acres x 750 lbs/ac x .70 = $15,750** |
| **Vegetables** | **10 acres x $1000/ac = $10,000** |
| **Total loss** | **$25,750** |

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

Dated this _____ day of _____, 20_____

_____     _____
Print name                        Affiant's Signature

SUBSCRIBED and SWORN to before me

_____
NOTARY PUBLIC in and for said County and State

My Commission Expires: _____, 20_____

4

STATE OF _Arkansas_   COUNTY OF _Pulaski_

AFFIDAVIT OF: **ISADORE CALDWELL**   SSN: _432 86 2317_

VICTIM: **LEE SYLVESTER CALDWELL**   RELATION TO: **FATHER**

CASE **NO:**   **MEMBER NO:**

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

Dated this ___10_th___ day of _April_ , 20_13_

_ISADORE CALDWELL_   _Isadore Caldwell_
Print name   Affiant's Signature

SUBSCRIBED and SWORN to before me:

NOTARY PUBLIC in and for said County and State
SIGNATURE OF NOTARY _Kristina Nelson_

My Commission Expires: ___10-08___ , 20_14_



*Exhibit L*

*USDA Hispanic & Women Farmers and Ranchers*
Claims Administrator
PO Box 4540
Portland, OR 97208-4540

592806174880

Tracking Number: 159150

000 0000418 00000000 001 001 00418 부0도: 0 0
ESTATE OF LEE S CALDWELL
C/O ISADORE J CALDWELL
PO BOX 164062
LITTLE ROCK, AR 72216

July 17, 2013

Re:    Ineligibility for Claims Resolution Process

Dear Estate Of Lee S Caldwell,

Thank you for your interest in the Hispanic and Women Farmers and Ranchers Claims Resolution Process.  To participate in this Process, you must be either Hispanic/Latino or female.  On your Claim Form, you indicated that you are an African American male.  As a result, you are not eligible to participate in this Claims Resolution Process, and your claim has been DENIED.

If you have any questions, please contact us at 1-888-508-4429 or visit the website at www.farmerclaims.gov.

Sincerely,

Claims Administrator

Exhibit M

*USDA Hispanic & Women Farmers and Ranchers*
**Claims Administrator**
**PO Box 4540**
**Portland, OR 97208-4540**

592806759151

Tracking Number: 85434

000 0010257 00000000 001 001 05129 000: 0 0
ROBERT L MOSBY
5386 STEPHEN FOREST CV
MEMPHIS, TN 38141-0504

*Exhibit N*

May 8, 2015

## USDA Hispanic & Women Farmers and Ranchers Claims Resolution Process

## TIER 1(a) CLAIM DETERMINATION FORM

### PART I. CLAIMANT INFORMATION

**Claimant:**
ROBERT L MOSBY
5386 STEPHEN FOREST CV
MEMPHIS, TN 38141-0504

### PART II. SUMMARY OF CLAIM DETERMINATION

The claim that you submitted for the above-named Claimant in the Hispanic and Women Farmers and Ranchers Claims Resolution Process has been reviewed. The Adjudicator has determined that your claim is **DENIED**.



If you asserted that you are Hispanic/Latino, you failed to prove that you applied, or constructively applied, for a specific farm credit transaction at a USDA office between January 1, 1981 and December 31, 1996, or between October 13, 1998 and October 13, 2000.

You failed to prove that the USDA action on your application was due to discrimination against you based on being Hispanic or female.

You failed to provide sufficient documentation, or the documentation that you provided was not sufficient to meet the requirements under the Framework.

**THIS DECISION IS FINAL.**

**QUESTIONS:** If you have any questions, please visit the website at www.farmerclaims.gov, or you may contact the Claims Administrator at 1-888-508-4429.

# Exhibit N