UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ESTATE OF EARNEST BOYLAND, *et al.*, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> MICHAEL YOUNG, Acting Secretary, ) <br> U.S. Dep't of Agriculture, *et al.*, ) <br> ) <br> Defendants. ) | Case No. 15-cv-1112 (TSC) |

## MEMORANDUM OPINION

In this case brought under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and the Fifth Amendment of the U.S. Constitution, Plaintiffs allege that they have been discriminated against by Defendants U.S. Department of Agriculture ("USDA") and Epiq Class Action & Claims Solutions, Inc. in the denial of their administrative discrimination claims. Before the court are Defendants' motions to dismiss. (ECF Nos. 5, 18). For the reasons stated below, both motions are GRANTED.

**I.    BACKGROUND**

Plaintiffs in this case are the estates of three Black farmers who seek compensation for past discrimination by the USDA, as well as the Black Farmers & Agriculturalists Association, Inc. ("BFAA"), an organization which advocates for redress of the USDA's past discrimination. (Compl. ¶ 1). This case relates to litigation that has been ongoing in some form for over twenty years. Following decades of discrimination by the USDA against Black farmers in the denial, delay, or frustration of their applications for farm loans or other benefit programs, the federal government entered into a class settlement consent decree. *See Pigford v. Glickman* ("*Pigford*

*I*"), 185 F.R.D. 82 (D.D.C. 1999).  Following this settlement, the USDA awarded over one billion dollars in compensation and relief to approximately 16,000 successful claimants.  *In re Black Farmers Discrim. Litig.* ("*Pigford II*"), 856 F. Supp. 2d 1, 10–11 (D.D.C. 2011).  Over 60,000 additional claimants sought compensation under the *Pigford I* consent decree but were denied because their claims were untimely.  *Id.* at 11.  After conducting hearings into the *Pigford I* settlement and claims process, Congress "resurrected the claims of those who had unsuccessfully petitioned the Arbitrator for permission to submit late claim packages" by passing the Food, Conservation, and Energy Act of 2008 ("2008 Farm Bill").  *Id.*  Approximately 40,000 claimants filed complaints in this court following the 2008 Farm Bill, and their claims were consolidated into the *Pigford II* litigation.  *Id.* at 13.  In 2011, the court in that case approved an additional settlement consent decree, with a potential total payout of an additional one billion dollars.  *See White v. Vilsack*, 80 F. Supp. 3d 123, 125 (D.D.C. 2015) (recounting *Pigford* history).  Unlike in *Pigford I*, the class members in *Pigford II* were not permitted to opt out, and the settlement terms were thus binding on all class members.  *See id.* at 126.

During the same time period, the USDA was engaged in class action litigation with other plaintiffs who similarly alleged discrimination by the agency.  Two lawsuits on behalf of Hispanic farmers and female farmers were brought in 2000, but the courts denied class certification in both cases.  *See Garcia v. Johanns*, 444 F.3d 625 (D.C. Cir. 2006) (affirming denials).  Following these denials of class certification, the USDA voluntarily created an alternative dispute resolution ("ADR") administrative claims process for Hispanic and female farmers to resolve their discrimination claims against the USDA.  *See Love v. Vilsack*, 304 F.R.D. 85, 87 (D.D.C. 2014) (describing administrative process established by the USDA); *Garcia v. Vilsack*, 304 F.R.D. 77, 79 (D.D.C. 2014) (same).  Participation in this administrative

claims process was conditioned on dismissal of the farmer's discrimination claims against the USDA. Defendant Epiq was selected to be the claims administrator. (Compl. ¶¶ 4–6).

Plaintiffs in this case—the estates of Earnest Boyland, David Shelton, and Lee Sylvester Caldwell—allege that they faced discrimination by the USDA during the relevant time period underlying the *Pigford I* litigation but failed to submit claims under either the *Pigford I* or *Pigford II* consent decrees. (Compl. ¶¶ 66, 68 (Boyland), 82 (Shelton), 89 (Caldwell)). Instead, in March 2013 Plaintiffs attempted to file claims under the ADR process established to resolve claims brought by Hispanic and female farmers, and their claims were denied because the claimants identified as Black male farmers, not Hispanic or female. (*Id.* ¶¶ 71–73 (Boyland), 78–79 (Shelton), 85–86 (Caldwell)). Plaintiffs, including BFAA, on behalf of themselves and all similarly situated individuals, brought this litigation alleging violations of their Fifth Amendment rights to due process and equal protection, as well as violations of Title VI. BFAA also attempted to intervene in the *Love* and *Garcia* cases to bring similar constitutional claims, but the court denied intervention. *See Love*, 304 F.R.D. at 89–92; *Garcia*, 304 F.R.D. at 81–85.

## II.   LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when it alleges sufficient facts to permit the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, although a plaintiff may survive a Rule 12(b)(6) motion even where "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above the

speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (internal quotation marks omitted). Evaluating a 12(b)(6) motion is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III. DISCUSSION

### A. Title VI Claims

In Counts I through IV, Plaintiffs allege that Epiq's denials of their claims violated Title VI because its determinations that they were ineligible for compensation were impermissibly based on their race. (Compl. ¶¶ 48–91). Under Title VI, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. Epiq argues that Plaintiffs' Title VI claims should be dismissed because (1) Title VI does not apply to the USDA's administrative claims process at issue here and (2) a Title VI claim cannot be brought against Epiq because it does not receive federal financial assistance.[1] The court agrees.

Title VI defines "program or activity" as the operations of a state or local government, a higher education institution, a local educational agency or school system, or corporations and other private entities "principally engaged in the business of providing education, health care, housing, social services, or parks and recreation." 42 U.S.C. § 2000d-4a(1)–(4). This statutory definition excludes federal agencies, and therefore it is well-recognized that Title VI does not reach "the operations of the federal government and its agencies." *DynaLantic Corp. v. U.S.*

---

[1] Epiq additionally argues that Plaintiffs' Title VI claims should be dismissed because Title VI requires proof of intentional discrimination, which Plaintiffs have not sufficiently alleged, and Plaintiffs lack standing to challenge the USDA program because they were not the intended beneficiaries. Because the court concludes that Title VI does not apply to Epiq in its role as a claims administrator for the USDA, the court need not consider these alternative arguments.

*Dep't of Defense*, 885 F. Supp. 2d 237, 291 (D.D.C. 2012); *see also Wise v. Glickman*, 257 F. Supp. 2d 123, 132 (D.D.C. 2003); *Williams v. Glickman*, 936 F. Supp. 1, 5 (D.D.C. 1996).  In the court's view, USDA's voluntary ADR process for resolving discrimination claims brought by Hispanic or female farmers against USDA is not a "program or activity" under the statutory definition because it does not involve any of the listed entities and therefore falls outside the scope of Title VI's coverage.  While USDA has contracted with Epiq — a private corporation — to process individuals' claims, Plaintiffs have not alleged any facts that Epiq is "principally engaged in the business of providing education, health care, housing, social services, or parks and recreation" in order to fall within the statutory definition for a covered "program or activity" under Title VI.

Even if Epiq were covered by the statutory definition, Plaintiffs must further allege that Epiq receives federal financial assistance to carry out its program or activity.  42 U.S.C. § 2000d. While the term "financial assistance" is not defined by the statute, under USDA's Title VI regulations, promulgated pursuant to 42 U.S.C. § 2000d-1, "financial assistance" is defined as

> (1) grants and loans of Federal funds, (2) the grant or donation of Federal property and interests in property, (3) the detail of Federal personnel, (4) the sale and lease of, and the permission to use (on other than a casual or transient basis), Federal property or any interest in such property or the furnishing of services without consideration or at a nominal consideration, or at a consideration which is reduced for the purpose of assisting the recipient, or in recognition of the public interest to be served by such sale, lease or furnishing of services to the recipient, and (5) any Federal agreement, arrangement, or other contract which has as one of its purposes the provision of assistance.

7 C.F.R. § 15.2(g).  The parties provided the court with no cases from this Circuit analyzing the scope of the term "financial assistance" in Title VI, particularly in the context of contracts to perform services for the federal government, and this question appears to be unresolved by the D.C. Circuit.  However, in analyzing the scope of the term "federal financial assistance" in an

analogous provision of the Rehabilitation Act, 29 U.S.C. § 704,[2] other district judges in this Circuit have concluded that the statute does not extend to entities receiving contractual payments made by the federal government in exchange for services. *See Lee v. Corrections Corp. of Am.*, 61 F. Supp. 3d 139, 144 (D.D.C. 2014) ("Courts . . . have consistently construed 'Federal financial assistance' to mean the federal government's provision of a subsidy to an entity, not the federal government's compensation of an entity for services provided"); *Abdus-Sabur v. Hope Village, Inc.*, --- F. Supp. 3d ----, 2016 WL 7408833, at *4 (D.D.C. Dec. 22, 2016) (same). Other Circuits have similarly concluded that to establish "federal financial assistance," there must be some allegation or evidence that the private entity received a subsidy, not simply compensation. *See Jacobson v. Delta Airlines, Inc.*, 742 F.2d 1202, 1210 (9th Cir. 1984) ("It is thus clear that payments . . . constitute federal financial assistance if they include a subsidy but that they do not constitute such assistance if they are merely compensatory."); *DeVargas v. Mason & Hanger-Silas Mason Co.*, 911 F.2d 1377, 1382 (10th Cir. 1990) (same); *Shotz v. Am. Airlines, Inc.*, 420 F.3d 1332, 1335 (11th Cir. 2005) (same). Moreover, at least one district judge outside of this Circuit has extended this subsidy analysis to Title VI. *See Jarno v. Lewis*, 256 F. Supp. 2d 499, 504–05 (E.D. Va. 2003) ("[T]he term 'federal financial assistance' should be given its plain and ordinary meaning, that is, aid provided to assist rather than to compensate for services rendered.").

     Here, Plaintiffs do not allege any facts with respect to the relationship between Epiq and the USDA beyond stating that Epiq is "employed" as a claims administrator. (*See* Compl. ¶ 4

---

[2] The Rehabilitation Act states that "[n]o qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination *under any program or activity receiving Federal financial assistance* or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 704 (emphasis added).

("Defendants, USDA employed or caused to be employed Defendant, EPIQ a/k/a the claims administrator, to implement Defendant, USDA's unconstitutional claims procedure."), ¶ 54 ("Defendant, EPIQ acted within the scope of its employment by Defendant, USDA.")). While Plaintiffs allege in conclusory language that Epiq is a "direct recipient of federal funds" and "an entity receiving federal funds" (*id.* ¶¶ 5, 69), Plaintiffs have not alleged facts to establish that Epiq receives a subsidy, or anything other than mere compensation, for its services. Therefore, Plaintiffs have failed to plead sufficient facts to establish that the USDA's administrative process for resolving discrimination claims, administered by Epiq, is covered by Title VI, which is the necessary first step in alleging a Title VI violation. *See Lee*, 61 F. Supp. 3d at 144 (dismissing Rehabilitation Act claim because "plaintiff d[id] not allege that defendant receive[d] subsidies from the federal government" to establish it received financial assistance). Epiq's motion to dismiss is therefore GRANTED.

    B.   Constitutional Claim

Plaintiffs next allege in Count V of their Complaint that the USDA violated their Fifth Amendment equal protection and due process rights by establishing an administrative claims process that considers only discrimination claims brought by Hispanic and female farmers.[3] (Compl. ¶¶ 92–117). The USDA argues that the issue of BFAA's standing to pursue this challenge has already been determined by another judge of this court, and therefore the doctrine

---

[3] It is unclear from Plaintiffs' Complaint whether their constitutional claims are also brought against Epiq. To the extent that they are, Epiq moves to dismiss these claims as well, on the basis that as a private non-governmental entity it may not be sued under the Constitution. Plaintiffs did not respond to Epiq's motion on these claims, and therefore conceded that these claims should be dismissed. *See, e.g.*, *Satterlee v. Comm'r*, 195 F. Supp. 3d 327, 337–38 (D.D.C. 2016) (treating arguments in a motion to dismiss as conceded when plaintiffs failed to address those arguments). Therefore, without addressing the merits of Epiq's argument, the court will grant Epiq's motion to dismiss as to these claims.

of *res judicata* bars re-litigating the issue. The court agrees, and further concludes that the individual Plaintiffs' claims should also be dismissed for failure to establish that their alleged injuries are fairly traceable to the remedy they seek.

The doctrine of issue preclusion "bars parties from re-litigating any issue 'contested by the parties and submitted for judicial determination in [a] prior case' so long as 'the issue [was] actually and necessarily determined by a court of competent jurisdiction in that prior case' and 'preclusion in the second case [would] not work a basic unfairness to the party bound by the first determination." *Gov't of Rwanda v. Johnson*, 409 F.3d 368, 374 (D.C. Cir. 2005) (quoting *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)). "Issue preclusion applies to threshold jurisdictional issues like standing as well as issues going to a case's merits." *Nat'l Ass'n of Home Builders v. EPA*, 786 F.3d 34, 41 (D.C. Cir. 2015).

In *Love* and *Garcia*, as here, BFAA sought a court order declaring that the Fifth Amendment's equal protection and due process protections "mandate[] that its members . . . [we]re entitled to file claims under the framework established for Hispanic and female farmers." *Garcia*, 304 F.R.D. at 81; *Love*, 304 F.R.D. at 88. The courts determined in both cases that BFAA "failed to demonstrate Article III standing to pursue" its constitutional claims. *Garcia*, 304 F.R.D. at 82–83; *Love*, 304 F.R.D. at 89–90. Specifically, the court noted that BFAA's members' purported injuries—i.e., the inability to have their claims adjudicated on the merits—were the direct result of *Pigford II*'s bar on any future *Pigford* claims, and as a result BFAA failed to establish how these injuries were "fairly traceable" to the USDA's administrative claims process or how the requested relief—participation in that process despite their claims already being barred—would redress that injury. *See id.* BFAA raises the same claim and seeks the same remedy here. (*See* Compl. ¶¶ 92–117, Section VII). Because the issue of BFAA's

standing to challenge the USDA's administrative claims process on these constitutional grounds has already been fairly litigated following BFAA's motions to intervene in *Love* and *Garcia*, the court finds that BFAA is barred from litigating that issue here, and will therefore GRANT the USDA's motion as to BFAA.[4]

With regard to the remaining Plaintiffs, the court must also consider whether they have standing to pursue their claims. The court's power under Article III "exists only to redress or otherwise to protect against injury to the complaining party." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Plaintiffs bear the burden of establishing each element of Article III standing. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Thus, Plaintiffs must show: "(1) an 'injury in fact' that is 'concrete and particularized' as well as 'actual or imminent'; (2) a 'causal connection' between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, 'that the injury will be redressed by a favorable decision.'" *Ark Initiative v. Tidwell*, 749 F.3d 1071, 1075 (D.C. Cir. 2014) (quoting *Lujan*, 504 U.S. at 560–61). "The absence of any one of these three elements defeats standing." *Newdow v. Roberts*, 603 F.3d 1002, 1010 (D.C. Cir. 2010).

Plaintiffs allege that they have been injured by the loss of the "opportunity [] to present a meritorious claim for discrimination against" the USDA. (Compl. ¶¶ 74 (Boyland), 83 (Shelton), 90 (Caldwell)). This injury must be "fairly traceable" to the USDA's allegedly unlawful

---

[4] Though the Boyland, Shelton, and Caldwell estates did not seek to intervene in *Love* or *Garcia*, the USDA still contends that issue preclusion bars their claims for the same reasons as BFAA's. The USDA argues that the individual Plaintiffs are organizational members of BFAA and are in privity with BFAA, and therefore should be bound by the same preclusive effect of the court's intervention rulings in those cases. Plaintiffs failed to respond to this argument in their Opposition, and the USDA argues in its Reply that the court should treat the issue as conceded. However, the court need not reach the issue of whether these Plaintiffs are in privity with BFAA, and will instead independently consider whether they have standing to pursue their claims here.

conduct. *Nat'l Ass'n of Home Builders*, 667 F.3d at 11. The USDA argues that, as the court decided with respect to BFAA in *Love* and *Garcia*, Plaintiffs' injuries are "fairly traceable" only to their failure to participate in the *Pigford I* or *Pigford II* litigation, because under the binding terms of that settlement they are now unable to seek relief for injuries that might have been redressed by the *Pigford* consent decrees. Therefore, the USDA argues, Plaintiffs' injuries are not fairly traceable to its administrative claims process for Hispanic and female farmers. Because there is no causal connection between the Plaintiffs' alleged injuries and the USDA's claims process, the USDA further argues that these injuries are unlikely to be redressed by a favorable decision in this litigation.

In response, Plaintiffs contend that *Pigford I* does not preclude their discrimination claims, as Congress in the 2008 Farm Bill revived the *Pigford* claims of those individuals who failed to file timely claims. However, Plaintiffs have stated in their Complaint that they did not participate in *either* the *Pigford I* or *Pigford II* litigation, and so it is not clear to the court, and Plaintiffs offer no guidance, as to why the 2008 Farm Bill is relevant to the question of whether Plaintiffs here may still bring discrimination claims against the USDA. It appears to the court that Plaintiffs' claims regarding past discrimination by the USDA are barred by the *Pigford* consent decrees, and the 2008 Farm Bill offers no help to Plaintiffs here. Plaintiffs have not alleged how their inability to now pursue claims for past discrimination as a result of *Pigford II* are traceable to the USDA's administrative claims process for Hispanic or female farmers, or how their requested relief—an order requiring participation in that claims process—would redress their injuries. As a result, the court concludes that Plaintiffs have failed to establish the necessary elements of Article III standing. The court will therefore GRANT the USDA's motion to dismiss the individual Plaintiffs' constitutional claims.

## IV. CONCLUSION

For the foregoing reasons, EPIQ's motion to dismiss is GRANTED, and the USDA's motion to dismiss is also GRANTED.

Date: March 16, 2017

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge